# EXHIBIT A

CIRCUIT COURT SUMMONS

# STATE OF TENNESSEE
# DAVIDSON COUNTY
# 20TH JUDICIAL DISTRICT

11338016    CB

☒ First
☐ Alias
☐ Pluries

Elizabeth E. Crockett

Plaintiff

CIVIL ACTION
DOCKET NO. 12C889

Vs.

Mortgage Electronic Registration Systems, Inc.

Bill Beckmann, President and CEO
1818 LIBRARY STREET SUITE 300
1818 Library Street Suite 300
RESTON, VA 20190
New York, NY 10018

Defendant

Method of Service:

RECEIVED

☐ Davidson County Sheriff
☐ Out of County Sheriff    MAR 0 8 2012
☐ Secretary of State
☒ Certified Mail           MERS
☐ Personal Service
☐ Commissioner of Insurance

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 2-29-12

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Elizabeth E. Crockett |
| --- | --- |
| | 2915 Woodlawn Drive |
| | Address |
| | Nashville, TN 37215 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
SHERIFF

To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20_____, I:

[  ] served this summons and complaint/petition on _____

_____ in the following manner:

[  ] failed to serve this summons within 90 days after its issuance because _____

_____

_____
Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the __1ST__ day of __MARCH__, 20 __12__ I sent, postage prepaid by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No. __12C889__ to the defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; BILL BECKMANN. On the _____ day of _____, 20____, I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20_____. Said return receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20_____.

_____
_____NOTARY PUBLIC or _____DEPUTY CLERK
MY COMMISSION EXPIRES: _____

_____
PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON
AUTHORIZED BY STATUTE TO SERVE PROCESS

## NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

ATTACH

RETURN

RECEIPT

HERE

(IF APPLICABLE)

STATE OF TENNESSEE
COUNTY OF DAVIDSON

I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

RICHARD R. ROOKER, CLERK

(To be completed only if
copy certification required.)

By: _____ D.C.



Elizabeth E. Crockett
2915 Woodlawn Drive
Nashville, TN 37215

FILED

2012 FEB 29 PM 2: 48

RICHARD R. ROOKER. CLERK

D.C.

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF DAVIDSON, TENNESSEE
CIVIL ACTION

Elizabeth E. Crockett
      Plaintiff

vs.

MUTUAL OF OMAHA BANK, Alleged
Successor By Acquisition of FIRST
NATIONAL BANK OF NEVADA and it's
affiliates, as Trustee for FIRST NATIONAL
BANK OF ARIZONA Pass-Through
Certificates series 2007-HY-3 Trust
3333 Farnan Street
Omaha, NE 68131

M&T BANK CORPORATION
One MTB Plaza
Buffalo, NY 14203

HSBC BANK USA, N.A.
452 5th Avenue
New York, NY 10018

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, Inc., as a
Nominee for FIRST NATIONAL BANK OF
ARIZONA
1818 Library Street Suite 300
Reston, VA 20190
      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 12C889

VERIFIED COMPLAINT FOR:
1. TEMPORARY RESTRAINING
   ORDER AND PRELIMINARY
   INJUCTIVE RELIEF
2. DECLARATORY JUDGMENT

JURY TRIAL DEMANDED

COMES NOW, Elizabeth E. Crockett hereinafter Plaintiff, per Tenn. Code § 29-14-101

et seq. and brings this verified claim for declaratory judgment as there are no material facts in

dispute:

SUMMARY OF ACTION

Plaintiff, personally and through a neutral third party escrow agent, served multiple pre-

petition administrative and commercial notices and demands upon Defendants MUTUAL OF

OMAHA BANK, alleged Successor By Acquisition of FIRST NATIONAL BANK OF

Page 1of 15

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 5 of 78 PageID #: 9

NEVADA and its affiliates, as alleged Trustee for FIRST NATIONAL BANK OF ARIZONA Pass-Through Certificates series 2007-HY-3 Trust (MOB), MTBBANK (MTB), and its/their agents, principals and assigns. MOB and MTB acknowledged service of said notices and demands. MOB and MTB failed to deliver a substantive written response or objection to Plaintiff's notices and demands. Plaintiff seeks declaratory judgment evidencing the receipt and failure of MOB and MTB to reply and/or object to Plaintiff's notices and demands.

## JURISDICTION

1. The events that form the basis of this complaint occurred in Davidson County, State of Tennessee and within the jurisdiction of this court. Jurisdiction is proper in this court as MOB and MTB, upon information and belief, do substantial business within this judicial district and the controversy involves real property.

2. This Court is vested with full authority to hear any and all claims asserted herein, including Federal Claims, pursuant to the Reverse Erie Doctrine as set down by the High Court in *Offshore Logistics v. Tallentire,* 477 U.S. 207 (U.S. 1986). In short even if the case is brought before the state court, the state court must follow federal statutory and general maritime law: See generally *Peterson v. United Accounts, Inc.* 638 F.2d 1134 (8th Cir. 1981):

> "We agree with the district court that Burleigh County District Court of the State of North Dakota, the court before which the state cause of action is pending, is a court of competent jurisdiction under this provision of the FDCPA. Hence, the FDCPA claim may be heard before that state court."

See also *Cooley v. Wachovia, Chase Manhattan et al.,* 365 BR 464 (March 13, 2007)

"State Courts have concurrent jurisdiction to hear TILA claims."

## PARTIES

3. Plaintiff is an individual domiciled in Davidson County, Tennessee.

4. Defendant MOB, upon information and belief, does substantial business in and has substantial contacts in Davidson County, Tennessee.

5. MOB is a necessary party as MOB may claim to have a legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title.

6. Defendant MTB, upon information and belief, does substantial business in and has substantial contacts in Davidson County, Tennessee.

7. Defendant MTB, upon information and belief, is a necessary party as MTB made the initial demand for payment to Plaintiff on the alleged account, as alleged agent/purported

- 2 -

"servicer" for MOB. (Notice to Agent is notice to principal, notice to principal is Notice to Agent).

8. MTB is a necessary party as MTB may claim to have a legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title.

9. Defendant Mortgage Electronic Registration Systems Incorporated (MERS), upon information and belief, does substantial business in and has substantial contacts in Davidson County, Tennessee.

10. MERS, upon information and belief, is a necessary party as MERS is named as purported nominee/agent for First National Bank of Arizona on the copy of the security instrument (deed of trust) in possession and control of Plaintiff, that is the subject of this action.

11. MERS is a necessary party as MERS may claim to have a legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiff's title.

12. Defendant HSBC Bank USA, N.A. (HSBC), upon information and belief, does substantial business in and has substantial contacts in Davidson County, Tennessee.

13. HSBC, upon information and belief, is a necessary party as HSBC is named as purported trustee for an unknown entity on a copy of an undated allonge to a copy of the promissory note in possession and control of Plaintiff, that is the subject of this action.

14. HSBC is a necessary party as HSBC may claim to have a legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiff's title.

## STATEMENT OF FACTS

9. As noted in the April 3, 2011 60 Minutes segment "The Next Housing Shock," Foreclosure fraud, has been exposed as a nationwide epidemic prompting criminal probes into illegal foreclosures by attorney general in all 50 states and the District of Columbia. http://www.cbsnews.com/video/watch/?id=7361572n

10. Plaintiff employed a neutral third party escrow agent to serve Plaintiffs' Notices and Demands on MOB and MTB.

11. Said neutral third party escrow agent did not provide legal services or advice to Plaintiffs.

12. Plaintiff employed a similar Administrative Process, grounded in Title 13 PA Code (UCC codified in PA) that has been recognized and successfully used in the Case of *Citi v. Paules*, York Cty PA 2011-CU-1542-06 (Exhibit 1).

- 3 -

13.  Plaintiffs' pre-petition Notices and Demands are in compliance with Tenn.R.C.P. Rule(s) 26-27, and principles of pre-complaint discovery seen in other states and applicable herein via Tenn. Evid. Rule(s) 201(d), 202(a), and the U.S. Const. art IV sec. 1 full faith and credit clause: To wit, Pa. Code Rule 4003.8(a) "A plaintiff may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party."

14.  Emblazoned on multiple Notices and Demands served on MTB, MOB, and its/their agents and principals is the following NOTICE:

**"Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent."**

15.  On July 11, 2011 MOB and MTB were served a Qualified Written RESPA Request (QWR) via certified mail # 7011 0470 0002 0780 5828 for an audit of Account # 0009456682 per Fair Debt Collection Practices Act, 15 USC 1692G Section 908(b), 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500, The Gramm Leach Bliley Act; The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. 111-203, H.R. 4173; The Home Ownership Equity Protection Act; The Fair Debt Collection & Reporting Act; and The Consumer Protection Act, of all official documents that would establish validity of the purported debt and allow a team of analysts to review all official contracts, records, ledger entries, the original genuine (free from fraud or forgery) promissory note, and book keeping practices pertaining to Acct. # 0009456682. (Exhibit 2).

16.  Per Federal Law the respondent to a RESPA QWR had 60 business days to <u>fully</u> comply with said request.

17.  Per Federal Law the respondent had 30 business days to respond to an FDCPA validation of purported "debt" request.

18.  In Tennessee the Servicer and each party in the Chain of Custody may be liable for a RESPA violation. See *Lee v. EquiFirst Corp.*, 2010 U.S. Dist. LEXIS 114396 (M.D. Tenn., Oct. 26, 2010) (Appendix-App A)

19.  The information necessary to conduct forensic accounting regarding Acct. #0009456682 , including the Pooling and Servicing Agreement (PSA), verified chain of custody of the original security (unaltered, genuine, free from fraud or forgery, wet ink signature promissory note), that after 220 days, has not been provided in direct <u>violation of Federal law.</u>

- 4 -

20. Copies of instruments and documents do not substantiate compliance with said QWR or FDCPA validation request per Tenn. Evid. Rules 1002 and 1003.

21. Per Tenn. Evid. Rule 1003, a duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

22. Plaintiffs, with knowledge of rampant foreclosure fraud across the country, questioned the authenticity of purported "copies" and demanded the original of all documents from MOB and MTB as strict proof of an alleged "debt" owing.

23. On July 11, 2011, MTB and MOB were served via USPS Cert. Mail # 7011 0470 0002 0780 5811, a second dispute of account per the Fair Credit Billing Act and the Fair Debt Collection Practices Act. (Exhibit 3)

24. MOB and MTB failed/refused to comply with Plaintiffs' Notices and demands.

25. MOB and MTB failed/refused to object to Notices and demands.

26. On July 12, 2011 MOB and MTB, named in Plaintiffs' "Conditional Acceptance of Your Offer/Claim charging me to pay $134,000.00; the Terms of Contract" were duly served by USPS Certified Mail #7011 0470 0002 0780 5835, with notice to collect the funds held in Escrow and to produce the original, unaltered, genuine, wet ink signature contract allegedly held by MOB and/or MTB as required by law. (Exhibit 4)

27. MOB and MTB failed to respond to said notice.

28. MOB and MTB failed to object to said notice.

29. On July 26, 2011, MOB and MTB were served a second notice by Escrow Agent Gloria J. Thompson, via USPS Certified Mail #7011 0470 0002 0780 5859, Re: Funds in the amount of $134,000.00 to include costs and fees held in Escrow for MOB and/or MTB to settle Account Number #0009456682; Original Contract Requested and Required for Release of funds; Funds Available until August 23, 2011. (Exhibit 5)

30. MOB and MTB failed to respond or object to said notice.

31. On August 23, 2011, a Notice Of Fault/ Opportunity to Cure was served on MOB and MTB via Certified Mail #7011 0470 0002 0780 5866 for failure to comply with prior demands.(Exhibit 6)

32. MOB and MTB failed to respond or object to said notice.

33. Gloria J. Thompson, escrow agent, executed a sworn affidavit attesting to the fact that MOB, MTB, and its/their agents, principals or assigns failed to collect the funds, and failed to

- 5 -

produce the original genuine contract. Said affidavit is public record, self authenticating evidence per Tenn. Evid. Rule 902. (Exhibit 7)

34. MOB, MTB and its/their agents, principals or assigns had Notice and Opportunity on four separate occasions to collect Plaintiff's tender of payment and to produce Plaintiff's original, unaltered, genuine wet-ink signature alleged "contract" with MOB, MTB and/or its agents, principals or assigns, as required by law.

35. MOB and MTB were warned on multiple occasions "Your silence is your acquiescence. See: *Connally v. General Construction Co.*, 269 U.S. 385, 391. Notification of legal responsibility is "the first essential of due process of law." Also, see: *U.S. v. Tweel*, 550 F. 2d. 297. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."

36. MOB, MTB, and/or it's their agents, principals or assigns, with no standing to do so, have attempted an illegal foreclosure sale of Plaintiff's real property.

37. MOB, MTB and it's their agents, principals or assigns have not filed any verified, authenticated, admissible evidence of a substitution of the real party in interest in any public record.

## FIRST CAUSE OF ACTION
## EMERGENCY TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

38. Plaintiff re-alleges and incorporates by reference all preceding paragraph as though fully set forth herein.

39. This is a suit for emergency temporary restraining order (TRO) and preliminary injunctive relief which is brought pursuant to applicable law.

40. Plaintiff has a clear legal right to seek a TRO and preliminary injunctive relief as Plaintiff is in possession and control of the real property, the subject of this action. Defendants MOB and MTB, are seeking, without satisfying the necessary legal standing requirements to illegally foreclose, to take possession, custody, and control of the Property, and ultimately extinguish Plaintiff's right, title and interest in Plaintiff's real property.

41. Plaintiff have no adequate remedy at law to redress the harm complained of, and the sale of the Plaintiff's real property, under the circumstances of record, is contrary to equity and good conscience in that such sale is being instituted by parties who have no legal standing to institute or maintain the foreclosure ab initio.

42. The specific facts set forth in this Complaint demonstrate that unless an emergency TRO and preliminary injunction is granted, Plaintiff will suffer irreparable injury, damage and loss of Plaintiff's real property.

43. The un-rebutted public record, self authenticating evidence shows Plaintiff(s) has/have a substantial likelihood of success upon the merits.

44. Due to the abundance of fraudulent foreclosure cases filed in courts across the country, irreparable loss of the Plaintiff's real property will result if the relief requested herein is not granted.

45. The granting of the relief requested herein is in the public interest, as the consuming public, including Plaintiff, will continue to be harmed by the illegal and unlawful conduct of MOB and MTB if the relief requested herein is not granted.

46. Under the circumstances where there is no harm to MOB, MTB and its/their agents, principals or assigns with the granting of the requested relief, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of MOB, MTB and its/their agents, principals or assigns with the granting of the requested relief for which a bond would otherwise be necessary.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

47. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

### 6 Elements for Declaratory Judgment to Be Met

48. (1) There is a *bona fide,* actual, present, practical need for the declaration sought. Plaintiffs have met this burden, as Plaintiffs have exhausted their administrative remedies before resorting to litigation.

49. MOB, MTB and its/their agents, principals or assigns have failed/refused to comply with state and federal law, and failed/ refused to comply with pre-petition discovery.

50. Plaintiff's actual need for declaratory judgment arises out of the court's power to declare rights, and the declaration shall have the force and effect of a final judgment or decree, which up until this point Plaintiffs have been unable to achieve without resorting to judicial process.

- 7 -

51. (2) The declaration deals with present, ascertained or ascertainable state of facts or present controversy as to a state of facts. Anticipated future controversies will not support the action.

52. Plaintiff has attached public record, self authenticating, un-rebutted, admissible evidence per Tenn. Evid. Rule 902 that supports the un-rebutted present facts.

53. (3) Some right, power, privilege, or immunity of the complaining party is dependent on the facts or the law applicable to the facts.

54. Plaintiff's right to redress the unsubstantiated claim made upon Plaintiff in future civil and criminal complaints is dependent on the facts, law, and public record, self-authenticating evidence filed in the instant case. See *County Materials Corp. v. Allan Block Corp.*, 431 F.Supp.2d 937, 945 (W.D. Wisc. 2006) ("a declaratory judgment action is proper when a declaration of rights is a bona fide necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business.")

55. (4) Some person has or may have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

56. The evidence shows that MOB, MTB and *its/their agents, principals or assigns have* claimed some interest in the subject matter.

57. Plaintiff is unsure as to the identities of unknown certificate holders who may have purchased mortgage backed securities, collateralized debt obligations, counterparties to credit default swaps, or any other legal person who may have an actual, present, adverse, and antagonistic interest or claim in the subject matter of Plaintiff's complaint.

58. (5) The adverse and antagonistic interest is before the court by proper process or class representation.

59. The adverse and antagonistic interest is before the court by proper process to known persons with an antagonistic interest including MOB and MTB, as purported agents, principals or assigns for HSBC, MERS, and for unknown persons with a potential antagonistic interest in the subject matter.

60. (6) The relief sought is not merely the giving of legal advice by the court or an answer to questions founded merely in curiosity.

61. Plaintiff does not seek the counsel or advice of this court, as Plaintiff is capable of handling Plaintiff's commercial matters.

- 8 -

62. Plaintiff merely seeks the court's power, having obtained jurisdiction through proper process, over known persons believed to have an antagonistic interest in the subject matter, to declare judgment in favor of Plaintiff so that Plaintiff can enforce Plaintiff's commercial rights at law and equity in future suits.

## **SUFFICIENCY OF PLEADING**

63. A complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim which would entitle her to relief". (*Housley v. U.S. (9th Cir. Nev. 1994 35 F.3d 400, 401)*

64. "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiff." (*Argabright v.United States, 35 F.3d 1476, 1479 (9th Cir. 1996)*

65. Plaintiff has sufficiently pled that relief can be granted on each and every one of the complaint's causes of action. This is a pre-emptive statement since Defendant(s) will most likely attempt to file a Tenn.R.C.P. Rule 12.02(6) Motion to Dismiss.

66. Plaintiff has exhausted all Plaintiff's administrative remedies before wasting the taxpayers' and court's judicial resources.

67. The Complaint includes short, plain and precise statements of the basis for relief in accordance with Tenn. R.C.P. Rule 8.01(1) "short and plain statement of the claim showing that the pleader is entitled to relief."

68. The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Plaintiff is entitled. (*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986)*).

69. "The legal conclusions in the complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such." (*Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir, 1994).*

70. Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in support of their claim entitling them to relief. (*Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401).* Therefore, relief as requested herein should be granted.

71. There are no issues of material fact in dispute.

72. This matter has been well settled with ample evidence.

- 9 -

## ESTOPPEL OF MOB, MTB AND ITS/THEIR AGENTS, PRINCIPALS OR ASSIGNS
## TO ENTER ANY WRITTEN OR ORAL ARGUMENT

73.  MOB, MTB and it's/their agents, principals or assigns are estopped from uttering any oral or written objection, statement, motion or any other writing in this matter due to their failure/refusal to answer Plaintiff's repeated demands for proof of claim.

74.  Silence is acquiescence where there is a legal duty to answer. Robert G. Wilmers, as CEO of MTB, Jeffrey Schmid, as CEO of MOB, had a fiduciary duty to the corporation to answer and failed in their duty. See: *Connally v. General Construction Co.*, 269 U.S. 385, 391. Notification of legal responsibility is "the first essential of due process of law." Also, see: *U.S. v. Tweel*, 550 F. 2d. 297. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."

*Bean v. Steuart Petroleum Co.*, 244 Md. 459, 1966 Md. LEXIS 454 (Md., November 17, 1966, Decided) "...It would appear that this Court relaxed its view that mere silence is insufficient to create an estoppel and that other misleading action coupled with the silence on the part of the party to be estopped is needed in order to find estoppel in pais.."

*Wiser v. Lawler*. No. 174. 189 U.S. 260; 23 S. Ct. 624; 47 L. Ed. 802; 1903 U.S. LEXIS 1349 Argued February 25, 26, 1903. April 27, 1903, Decided. "To constitute an estoppel by silence there must be something more than an opportunity to speak. There must be an obligation. This principle applies with peculiar force where the persons to whom notice should be given are unknown.

The authorities recognize a distinction between mere silence and a deceptive silence accompanied by an intention to defraud, which amounts to a positive beguilement.

In all of the cases holding a party to be estopped by his silence, the silence operated as a fraud and actually itself misled. In all there is both the specific opportunity and apparent duty to speak. And, in all, the party maintaining silence knows that some one else is relying upon that silence, and either acting or about to act as he would not have done had the truth been told. These elements are essential to create a duty to speak."

*Ganley v. G & W Ltd. Partnership*, 44 Md. App. 568, 1980 Md. App. LEXIS 211 (Md. Ct. Spec. App., January 11, 1980, Decided )

"Estoppel is cognizable at common law either as a defense to a cause of action, or to avoid a defense. There may be an estoppel to prevent a party from relying upon a right of property or contract, or of remedy both at law or in equity. Equitable estoppel operates as a <u>technical rule of law</u> to prevent a party from asserting his rights where it would be inequitable and unconscionable to assert those rights. It is essential for the application of the doctrine of equitable estoppel that the party claiming the benefit of the estoppel must have been misled to his injury and changed his position for the worse, having believed and relied on the representations of the party sought to be estopped. Mere silence will generally not raise an estoppel against a silent party. **The doctrine is only applicable when there is a duty imposed upon the party remaining silent to speak.** Whether an estoppel exists is a question of fact to be determined in each case."

## JUDICIAL NOTICE #1

Plaintiff Notices this court of foreign case citations and code per TN Rules 201 and 202 Judicial Notice-A judicially noticed fact must be one not subject to reasonable dispute in that it is either known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

## JUDICIAL NOTICE #2

Plaintiff Notices this court per Tenn Evid. Rule(s) 201 and 202 that Notary Public's have the same authority as a magistrate. *Compton v. Alabama, 214 U.S. 1 (1909).* "An affidavit before a notary public is sufficient under § 5278, Rev.Stat., upon which to base a demand for return of a fugitive from justice if such officer is, as he is regarded in Georgia, a magistrate under the law of the state."

## JUDICIAL NOTICE #3

Plaintiff Notices the court per Tenn. Evid.Rule(s) 201 and 202 of the Notary Act of 1850.

*THIRTY-FIRST CONGRESS Sess.I Ch.52,53. 1850*

Sept 16, 1850 Chap. LII An Act to authorize Notaries Public to take and certify Oaths, Affirmations, and Acknowledgments in certain Cases.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That in all cases in which, under the laws of the United States, oaths, or affirmations, or acknowledgments may now be taken or made before any justice or justices of the peace of any State or Territory, such oaths, affirmations, or acknowledgments may be hereafter also taken or made by or before any notary public duly appointed in any State or Territory, such oaths, affirmations, or acknowledgments may be hereafter also taken or made by or before any notary public duly appointed in any State or Territory, and, **when certified under the hand and official seal of such notary, shall have the same force and effect as if taken or made by or before such justice or justices of the peace.** And all laws and parts of

- 11 -

laws for punishing perjury, or subordination of perjury, committed in any such oaths or affirmation, when taken or made before any such justice of the peace, shall apply to any such offence committer in any oaths or affirmations which may be taken under this act before a notary public, or commissioner, as hereinafter named: Provided always That on any trial for either of these offences, the seal and signature of the notary shall not be deemed sufficient in themselves to establish the official character of such notary, but the same shall be shown by other and proper evidence.

And be it further enacted, That all the **powers and authority conferred in and by the preceding section of this act upon notaries public be, and the same are hereby, vested in, and may be exercised by, any commissioner appointed, or hereafter to be appointed, by any Circuit Court of the United States, under any act of Congress authorizing the appointment of commissioners to take bail, affidavits, or depositions,** in causes pending in the courts of the United States.

Approved, September 16, 1850. (Statutes at large are available at any regional public library in the United States.)

Congress has the power of a local legislature and may, pursuant to Article I, Sec. 8, cl.9, 18, vest jurisdiction to hear matters of local law and local concerns in courts not having Article III characteristics. In summary, territorial courts are Article I courts in which **Notaries Public are granted full faith and credit** for their books and records duly authenticated by oaths and affirmations and the seal and signature and other proper evidence with full force and effect as if taken or made by or before justice or justices of the peace.

## JUDICIAL NOTICE #4

Plaintiff Notices the court per Tenn. Evid. Rule(s) 201 and 202 of the Model Notary Act of 2010 §2-22 "Verification of Fact" and Staff Comment on p.15 (p.29 of pdf), excerpted below.

http://www.stephenmason.eu/wp-content/uploads/2010/01/model-notary-act-of-2010.pdf

"….this section gives lawmakers the option of allowing notaries to perform a verification of fact function. The statutory list of verifiable facts may be tailored to a particular jurisdiction…. The verification of fact certificate in Section 9-9 gives notaries the option of visiting a pertinent office that houses public, vital, or other records to ascertain the needed facts, or **accepting a record from an individual named in the certificate.** Clearly, the former option is preferred, but **notaries are given discretion in the latter case to assess the trustworthiness of any presented record.**

In the former Act, this section was bracketed to indicate that the verification of fact was a notarization departing from the notary's traditional duties. After careful consideration, the drafters decided to remove the brackets in their effort to enhance the public utility of the notary office and in their belief that the new duties were not beyond the ken of notaries."

## JUDICIAL NOTICE #5

Plaintiff Notices the court per Tenn. Evid. Rule(s) 201 and 202 of the U.S. Const. art I, sec 10, cl.1. "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12

Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or **Law impairing the Obligation of Contracts**, or grant any Title of Nobility.

WHEREFORE, Counter-Plaintiff demands judgment as follows:

## FIRST CAUSE OF ACTION

a) The court enters an Order granting a Temporary Restraining Order and Preliminary Injunctive Relief expressly enjoining MOB, MTB and/or its/their agents, principals or assigns from pursuing any further judicial or non-judicial foreclosure action, for the reasons set forth herein, until the merits of Plaintiff's case can be heard at trial, and for any other and further relief which is just and proper;

## SECOND CAUSE OF ACTION

b) Declaring that MOB and MTB failed/ refused to comply with, or object to, Plaintiff's pre-petition Notices and Demands to prove the purported claim of MOB, MTB and its/their agents, principals or assigns;

c) Declaring that MOB and MTB and its/their agents, principals or assigns had a duty to substantively respond to Plaintiff's Notices and Demands;

d) Declaring that acts of a notary public as witness to an administrative process are given full faith and credit in a foreign court when supported with public record evidence.

e) Declaring that MOB and MTB and its/their agents, principals or assigns failed and refused to comply with, or object to, state and federal law by failing to substantively answer Plaintiff's RESPA Qualified Written Request, FDCPA validation of debt letter and TILA request.

## ON ALL CAUSES OF ACTION

f) For the costs of suit incurred herein; and

g) For such other and further relief as the Court may deem just and proper. Plaintiff reserves the right to Amend this Complaint.

JURY TRIAL DEMANDED

Dated this 28th day of FEBRUARY 2012

I hereby certify that this is a true copy of original instrument filed in my office this ___ day of _____ 20__.

RICHARD R. ROOKER, Clerk

By _____
    Deputy Clerk

Elizabeth E. Brockett

**VERIFICATION OF COMPLAINT**

STATE OF _____7ᴺ_____

COUNTY OF ___Davidson___

     BEFORE ME personally appeared Elizabeth E. Crockett who, being by me first duly sworn and identified in accordance with Pennsylvania law, deposes and says:

1.  My name is Elizabeth E. Crockett.

2.  I have read and understood the attached foregoing complaint filed herein, and each fact alleged therein is true and correct of my own personal knowledge.

     FURTHER THE AFFIANT SAYETH NAUGHT.

_____
Elizabeth E. Crockett, Affiant

Subscribed and sworn to (or affirmed) before me on this 29 day of March, 2012, by _____
___Elizabeth E. Crockett___ proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature: _____    Seal      My Commission Expires: _____

*DAVID R.A. ROEIGER*
*STATE OF TENNESSEE*
*NOTARY PUBLIC*
*WILLIAMSON COUNTY*
*My Commission E.*

- 14 -

**FILED**

2012 FEB 29 PM 2:48

RICHARD R. ROOKER, CLERK

_____ D.C.

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

CITIMORTGAGE, INC., S/B/M TO PRINCIPAL
RESIDENTIAL MORTGAGE, INC.            :    NO. 2011-SU-1542-06
                     Plaintiff        :
                                      :
v.                                    :
                                      :
BRIAN W. PAULES                       :
NINA L. PAULES                        :
                     Defendants       :

OFFICE OF PROTHONOTARY
2011 MAY 18 PM 3:24
JUDICIAL CENTER
YORK, PA

## NOTICE TO PLEAD

TO:    Citimortgage, Inc., s/b/m to Principal Residential Mortgage, Inc., Plaintiff

You are hereby notified to plead to the enclosed New Matter within twenty (20) days from

service hereof or a default judgment may be entered against you.

BLAKEY, YOST, BUPP & RAUSCH, LLP

By: _____
       John J. Baranski, Esquire
       Attorney for Defendants
       Supreme Ct. I.D. #82585
       17 East Market Street
       York, PA  17401
       jbaranski@blakeyyost.com
       Telephone (717) 845-3674
       Fax No. (717) 854-7839

PLTF EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

CITIMORTGAGE, INC., S/B/M TO PRINCIPAL
RESIDENTIAL MORTGAGE, INC.            :      NO. 2011-SU-1542-06
                Plaintiff            :

                                       :
v.                                   :
                                       :
BRIAN W. PAULES                      :
NINA L. PAULES                       :
                Defendants           :

OFFICE OF PROTHONOTARY
2011 MAY 18 PH 3: 24
JUDICIAL CENTER
YORK, PA

## ANSWER WITH NEW MATTER
## TO COMPLAINT IN MORTGAGE FORECLOSURE

AND NOW COMES the Defendants, Brian W. Paules and Nina L. Paules, and by their

attorneys, Blakey, Yost, Bupp & Rausch, LLP, and files this Answer with New Matter to

Complaint in Mortgage Foreclosure as follows:

    1.     Admitted.

    2.     Admitted.

    3.     Admitted in part and denied in part. Defendants admit they executed a mortgage

to American Home Bank, N.A. which is recorded at 1576, page 7506. Defendants deny that it

was assigned to Plaintiff. On the contrary the mortgage was assigned to Principal Residential

Mortgage, Inc.

    4.     Admitted.

5.     The averments of Paragraph 5 of are conclusions of law to which no response is required.

. 6.     Denied. Defendants are without sufficient information or knowledge to form a belief as to the truth of these averments and strict proof thereof is demanded.

7.     Admitted.

8.     The averments of paragraph 8 are conclusions of law to which no response is required.

WHEREFORE, Defendants request judgment in their favor and against Plaintiff.

## NEW MATTER

9.     The averments of Paragraphs 1 through 8 are incorporated as if set forth herein in their entirety.

10.     On February 22, 2011, Defendants sent a certified letter to CitiMortgage, Inc., and to CitiMortgage. The letter is attached hereto, incorporated herein and marked as Exhibit "A".

11.     The letter was delivered to CitiMortgage, Inc. and signed for by "J. Rhoads" on March 2, 2011. A copy of the USPS Certificate of Mailing and the USPS Domestic Return Receipt is attached hereto, incorporated herein and marked as Exhibit "B".

12.     The purpose and intent of this letter was to form a self-executing agreement with Plaintiff.

13.     By the terms of the agreement, Defendants would tender $145,000.00 into escrow with a Gloria J. Thompson, a third party escrow agent, with the funds to be released to the

Plaintiff upon presentation by the Plaintiff to Ms. Thompson of the original, wet ink signature Note secured by the Mortgage which is the subject of this foreclosure action.

14. On March 8, 2011, third party escrow agent Gloria J. Thompson sent a certified letter to CitiMortgage, Inc. and CitiMortgage. A copy of the letter is attached hereto, incorporated herein and marked as Exhibit "C".

15. The letter was delivered to CitiMortgage, Inc. and signed for by "J. Nevois" on March 11, 2011. See Exhibit "B".

16. Ms. Thompson's letter of March 8, 2011 confirmed to Citimortgage, Inc. that she had in her possession Defendants' $145,000.00.

17. Ms. Thompson executed a Third Party Affidavit of Service on March 8, 2011. Attached hereto, incorporated herein and marked as Exhibit "D" is a copy of Ms. Thompson's March 8, 2011 affidavit.

18. On April 5, 2011, third party escrow agent Gloria J. Thompson sent a Notice of Default and Opportunity to Cure by certified mail to CitiMortgage, Inc. and CitiMortgage. A copy of the notice is attached hereto, incorporated herein and marked as Exhibit "E".

19. The Notice was delivered to CitiMortgage, Inc. and signed for by "B. Talley" on April 8, 2011. See Exhibit "B".

20. Ms. Thompson executed a Third Party Affidavit of Service on April 5, 2011. Attached hereto, incorporated herein and marked as Exhibit "F" is a copy of Ms. Thompson's April 5, 2011 affidavit.

21. On April 19, 2011, third party escrow agent Gloria J. Thompson executed an Affidavit of Non-Response Commercial Oath Verification. Attached hereto, incorporated herein and marked as Exhibit "G" is a copy of the Affidavit of Non-Response.

22. The certified mailings delivered to Plaintiff and attached hereto, form a contract with Defendants, the terms of which required Plaintiff to produce the original wet ink signature Note signed by Defendants.

23. Plaintiff failed to produce the original, wet ink signature Note signed by Defendants or provide an explanation why such Note could not be produced.

24. Plaintiff's failure to produce the original wet ink signature Note constitutes a default by Plaintiff of the terms of the agreement formed with Defendants by the certified mailings attached hereto.

25. As a result of Plaintiff's default, Defendants are entitled to recover damages against Plaintiff.

26. The amount of damages claimed by Defendants against Plaintiff exceeds the arbitration limits of York County.

WHEREFORE, Defendants demand judgment against Plaintiff in an amount in excess of the arbitration limits of York County.

Respectfully submitted:

BLAKEY, YOST, BUPP & RAUSCH, LLP

Dated: 5/11/2004

By: _____
John J. Baranski, Jr., Esquire
S. Ct. I.D. #82585
17 East Market Street
York, PA 17401
jbaranski@blakeyyost.com
Telephone (717) 845-3674
Fax No. (717) 854-7839
Attorney for Defendants

## VERIFICATION

I verify that the information set forth in the foregoing Answer with New Matter is true and correct to the best of my knowledge, information and belief. I understand that any false statements contained herein are subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

Date: _May 17, 2011_        _Brian W. Paules_
                            Brian W. Paules



Pamela 9/6/2011

In care of: Charla J. Thompson, Notary Public
Far: Brian W. and Nina L. Paulse
P.O. Box 16281
St. Petersburg, FL 33733-8267

Date: February 22, 2011

Certified Mail # 7009xxx0804xxx9737, Return Receipt Requested
To: Sanjiv Das , President
    Citimortgage, Inc.
    1000 Technology Drive
    O'Fallon, MO 99801-9005

    Sanjiv Das , President
    Citimortgage
    1000 Technology Drive
    O'Fallon, MO 99801-9005

Re: Citimortgage, Inc. and Citimortgage, Inc. vs. Brian W. and Nina L. Paulse; Account no. 35F4748-E; my Conditional
Acceptance of Your Offer charging me $145,080.03 and the Terms of Contract.

Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent

Dear Sir or Madam;

I am in receipt of your Notice that Citimortgage, Inc. represents (as trustee) Citimortgage, Inc. (hereinafter 'Citimortgage') the
alleged holder of the above referenced loan. As acceptor of your offer to foreclose or collect I have the right to dictate terms
(especially those protections I have under the law.

This letter will serve as notice on my acceptance of your affordable, upon presentment of the original unaltered (wet
ink signature) note. This is the first requirement under the terms of this self executing agreement. As you know, upon
payment, I am entitled to the original unaltered (wet ink signature) note so that it may not be re-presented by another
alleged "valid collection." In recent cases brought by various banks, the courts have frozen out the complaints for failure by
said banks to bring forward the basis to prove up their claims. Consider the article by Bob Ivry of Bloomberg.com from which
this short quote is taken:

    U.S. District Judge David G. Dowd Jr in Ohio's northern district chastised CHASE Bank National Trust Co. and
    Argent Mortgage Securities Inc. In October for what he called their "cavalier approach" and "take my word for it"
    attitude toward proving ownership of the mortgage note in a Bradenton case.

    John Gallagher, a spokesman for Frankfurt-based CHASE Bank AG said the bank had no comment.

    Federal District Judge Christopher Boyko chastised 14 foreclosure cases in Cleveland in November due to the
    inability of the trustee and the servicer to prove ownership of the mortgages.

    Similar cases were dismissed during the past year by judges in California, Massachusetts, Kansas and New York.
    http://www.boomberg.com/apps/news?pid=GR0Y10Atoahr-rej5XAqvuTCMArder+ye&X8.net

    GMAC L.L.C. - Updated Sept, 27, 2010 - In September 2010, GMAC adopted fixed slicked legal rules in its
    rush to file foreclosures so quickly as possible and announced it was imposing a moratorium on many of them as it
    tried to ensure they were done correctly. GMAC declined to provide any details or answer questions, but its actions
    suggested that it was concerned about potential liability in evicting families and selling homes to which it did not
    have clear title. The company also said it was reviewing completed foreclosures where the home remained
    procedure might have been used. The move has incited consternation for the millions of targets of foreclosed
    homes, some of whom might not have clear title to their bargain property. And it may offer unforeseen opportunities
    for those who were evicted. See http://topics.nytimes.com/top/national/usnews/companies/gmac-l.l.c.index.html?
    inline=nyt-org

    October 8, 2010, Bank of America, Atlanta's largest home-mortgage lender, said Friday that it has extended a
    23-state moratorium on bank-owned home sales to all 50 states while bank officials scrutinize the way they
    process foreclosures.

    JPMorgan Chase & Company - (PSE NYSE: Foreclosures - Updated: Oct. 13, 2010 - Morgan's Chase
    Retail Services announced earlier this month that as many as 56,000 of its mortgage had documentation
    problems, prompting calls for an industry wide investigation and a national moratorium on foreclosures.
    http://topics.nytimes.com/top/news/business/companies/jpmorgan_j_p_chase_and_company/index.html?inline=nyt-
    org

    All 50 States Start Inquiry Into Foreclosures - Published: October 13, 2010 - As the nation's attorneys general
    announced a joint investigation Into banks' paperwork filed to support home foreclosures, federal housing
    regulators urged lenders Wednesday to vet their foreclosure procedures and fix them.
    UPDATE 10/23/10, 10/23/10 - Georgia, California, and Tennessee Class Action against MERS

DEFENDANT'S EXHIBIT A
ALL-STATE LEGAL



CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 88901-6006

7008 1830 0004 4850 7414

CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 88901-6006

Paules
NPN-1

CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 88901-6006

7008 1830 0004 4850 7407

CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 88901-6006

CitiMortgage, Inc.
1000 Technology Drive
O'FaDcn, MO 88901-6006

7008 1830 0004 4850 7377

CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 88901-6006



DEFENDANT'S EXHIBIT



In care of Gloria J. Thompson, Notary Public
P.O. Box 16281
St. Petersburg, FL 33733-6281

Date: 05/09/2011

Certified Mail # 70081830000048507437
Return Receipt Requested

To: Sanjiv Das , President
CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 68901-6006

Sanjiv Das , President
CitiMortgage
1000 Technology Drive
O'Fallon, MO 68901-6006

Re: Funds in the amount of $145,000.00 held in Escrow for CitiMortgage, Inc.; to settle Account No. 3974745-6;
Original Note Requested and Required for Release of funds; Funds Available until 04/05/2011.

Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent

Dear Mr. Das :

As you have been previously noticed via certified mail no.: 70081830000048507377 and at the request of Brian W. and Nina L.
Paulss, I am in receipt, as Escrow Agent, of "legal tender funds" in the amount of $145,000.00 to be paid to CitiMortgage upon
production of the original unaltered (wet ink signature) promissory note held by you as collateral on loan number 3974745-6.

At your earliest convenience, please collect the funds by tendering the original unaltered (wet ink signature) note to me by
04/05/2011. Brian W. and Nina L. Paulss requires this so that the note may not be represented for collection. Upon receipt of the
original unaltered (wet ink signature) note, I will forward full payment of $145,000.00 now held in escrow to you or the agent you
designate to receive funds. I am also available to personally exchange funds for the instrument. Contact me via US Mail as soon as
possible to schedule the exchange. Mr. Paulss and Nina Lynn Paulss will require that I return our payment to us on 04/05/2011, so
please do not delay. Should CitiMortgage, Inc. and/or CitiMortgage default, on 04/05/2011, I will issue an Affidavit of Non Response.

I am not a party to any dealings between CitiMortgage, Inc., CitiMortgage and Mr. Paulss and Nina Lynn Paulss, and am merely
acting as an Escrow Agent in receipt hold party who assures that all conditions of a transaction are met to tender to you the funds
during the time stated. It is my responsibility to report either a successful exchange with, or a non-response by, CitiMortgage, Inc. or
CitiMortgage. Thank you.

Sincerely yours,

Gloria J. Thompson, Escrow Agent
cc: Brian Weston Paulss and Nina Lynn Paulss

"Void where prohibited by law"

Notary Public Paulss GLORIA J. THOMPSON level. All officiary licensed impression that the OR's state existing not global legislation or standard final Bill legal advice. She has provided no resolutions to this preparation of the above-mentioned documents, and has no interest in any figure referenced therein. GLORIA J. THOMPSON is NOT a party to this notice and is ONLY acting in an authorized capacity as bailee and witness to grant-convert non between Paulss/etc.



DEFENDANT'S
EXHIBIT
C

## THIRD PARTY AFFIDAVIT OF SERVICE

I, Gloria J. Thompson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the Notice of Funds Held in Escrow and your Claim charging $145,000.00 on behalf of Brian Westerr Paulas was made on ___March 8___, 20 11 by:

X    Mail service: by certified United States mail, postage fully prepaid addressed to:

     Sanjiv Das
     CitiMortgage, Inc.
     1000 Technology Drive
     O'Fallon, MO 88901-6006

     Sanjiv Das
     CitiMortgage
     1000 Technology Drive
     O'Fallon, MO 88901-6008

___   Personal Service: By leaving the process with attorney for plaintiff
___   Residence Service: By leaving the process with the following:
___   Publication: The defendant was served as follows: [Describe]
___   State Law: The defendant was served pursuant to the laws of the State of as follows: [Describe]

Under penalty of perjury, by the laws of the United States of America USC 1746 [1] I declare that the foregoing is true and correct.

Gloria J. Thompson, Notary Public          3/8/11
c/o P.O. Box 14251                         Date
St. Petersburg, FL 33733-8251

DEFENDANT'S EXHIBIT

In care of Gloria J. Thompson, Notary Public
P.O. Box 16231
St. Petersburg, FL 33733-6251

Date: 04/05/2011

Certified Mail # 7008 1830 0004 4850 7414
Return Receipt Requested

To: Sanjiv Das , President
CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63501-5005

Sanjiv Das , President
CitiMortgage
1000 Technology Drive
O'Fallon, MO 63501-5005

Re:     Notice of Fault with regard to the failure of CitiMortgage, Inc. or CitiMortgage to collect $145,000.00 held in Escrow for AKDIS to settle Account No. 3974745-6; failure of CitiMortgage or CitiMortgage, Inc. to produce the original unaltered (wet ink signature) promissory note required for release of funds; Funds were made available until 04/05/2011, and will be returned on 04/13/2011.

        Notice of Opportunity to Cure! Please advise me within 72 Hours that the Note will be produced and the Funds will be held and be made available for your collection.

Dear Mr. Das :

As you were previously noticed, at the request of Brian Paules and Nina Lynn Paules, I have held in Escrow for over ten days "legal tender funds" in the amount of $145,000.00 to be paid to CitiMortgage, Inc. upon production of the original unaltered (wet ink signature) promissory note held by you (or your agents) as collateral on loan number 3974745-6. As of 04/05/2011 I have not heard from you. No one from CitiMortgage, Inc. or CitiMortgage has contacted me with regard to exchanging the original unaltered (wet ink signature) Promissory Note and collect the $145,000.00 I have held for you.

This is my Notice of Fault and Notice of Opportunity to Cure! You have 72 hours from receipt of this notice to collect the funds by tendering the original note to me. Brian Weston Paules and Nina Lynn Paules requires this so that the note may not be represented for collection. Upon receipt of the original note, I will forward full payment of $145,000.00 now held in escrow to you or the agent you designate to receive funds. I am also available to personally exchange funds for the instrument. Contact me as soon as possible to schedule a meeting. Mr. Paules and Nina Lynn Paules will require that I return ours payment to us in just 72 hours from your receipt of this Notice. So please do not delay. Should CitiMortgage, Inc. and CitiMortgage default, on or about 04/13/2011, I will issue an Affidavit of Non Response.

I am not a party to any dealings between CitiMortgage, Inc., CitiMortgage et al and Mr. Paules and Nina Lynn Paules, and am merely acting as an Escrow Agent.

Sincerely yours,

Gloria J. Thompson / Escrow Agent

cc: Brian Paules and Nina Lynn Paules



## THIRD PARTY AFFIDAVIT OF SERVICE

I, Gloria J. Thompson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the Notice of Funds Held in Escrow and your Claim charging $145,000.00 on behalf of Brian Weston: Pardon was made on _April 5_, 20__ by:

X    Mail service: by certified United States mail, postage fully prepaid addressed to:

      Sanjiv Das
      CitiMortgage, Inc.
      1000 Technology Drive
      O'Fallon, MO 88501-8006

      Sanjiv Das
      CitiMortgage
      1000 Technology Drive
      O'Fallon, MO 88901-5006

___  Personal Service: By leaving the process with attorney for plaintiff
___  Residence Service: By leaving the process with the following:
___  Publication: The defendant was served as follows: [Describe]
___  State Law: The defendant was served pursuant to the laws of the State of as follows: [Describe]

Under penalty of perjury, by the laws of the United States of America USC 1746 (1) I declare that the foregoing is true and correct.

_Gloria J. Thompson_            _4/5/11_
Gloria J. Thompson, Notary Public      Date
c/o P.O. Box 16257
St. Petersburg, FL 33733-6251

DEFENDANT'S EXHIBIT

2011002808
MACOIN CO. NC FEE $96.00
NON-STANDARD DOC FEE $25.00

04-28-2011 02:09:48 PM

TODD RABY
REGISTER OF DEEDS

BK: CRP H-34
PG: 804-813

## AFFIDAVIT OF NON-RESPONSE
## COMMERCIAL OATH AND VERIFICATION

The State of Florida )
)      Commercial Oath and Verification
Pinellas County )

Gloria J. Thompson, Notary Public, acting as a neutral third party Escrow Agent under Her Commercial Oath with unlimited liability, proceeding in good faith being of sound mind states that the facts contained herein are true, correct, complete and not misleading to the best of Her private firsthand knowledge and belief under penalty of International Commercial Law.

1. That the evidence shows that the Respondent, Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage, Inc. (hereinafter "CitiMortgage") named in Brian-Weston: Pasley's administrative remedy "Conditional Acceptance of Your Offer and Complaint charging me $145,000.00 (with fees and costs) and the Terms of Contract" was duly served by Certified Mail on or about 03/02/2011 AD as attached. With notice to collect the funds held in Escrow and to produce the original unaltered (wet ink signature) promissory note claimed to be held by CitiMortgage, Inc., servicing agent of CitiMortgage and the basis of their claim.

2. That 3 days for CitiMortgage, Inc., servicing agent of CitiMortgage to withdraw the claim and/or demand for payment and refuse Brian-Weston: Pasley's self-executing contract were allowed and no withdrawal was made.

3. That the Notice of Funds in the amount of $145,000.00 held in Escrow for CitiMortgage, Inc.; to settle Account No. 3974745-6; original unaltered (wet ink Signature) note requested and required for release of funds and the 20 days to collect, as attached, was received and commenced on 03/11/2011.

Page 1 of 3



4. That the date to collect the $145,000.00 and produce the original unaltered (wet ink signature) note held by CitiMortgage, Inc., servicing agent of CitiMortgage concluded on 04/05/2011.

5. That the NOTICE OF FAULT, as attached, was received on or about 04/08/2011 AD commencing the 3 day OPPORTUNITY TO CURE not including the day received.

6. That 3 days for mailing were allowed and concluded on or about 04/19/2011.

7. That no response or attempt to collect tendered payment of $145,000.00 held in escrow to any of the above notices is evidenced by U.S. MAIL and any other private carrier.

8. That the Respondent, Sanjiv Das , President/ CEO of CitiMortgage are now in DEFAULT without recourse and is found in agreement and harmony with the Declarant, Brian-Weston: Paules, in his "Conditional Acceptance of Your Offer and Complaint charging $145,000.00 (with fees and costs) and the Terms of Contract." Which terms instructed me to hold $145,000.00 in legal tender funds for collection by Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage upon production of the original unaltered (wet ink signature) note held by CitiMortgage, Inc., servicing agent of CitiMortgage.

9. That the Respondents, Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage et al. all agree that they do NOT have the original unaltered (wet ink signature) note, the basis of their claim and that their claim is therefore fraudulent, a counterfeit security and in violation of federal and state laws punishable by fines and/or imprisonment.

10. That the Respondents, Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage et al. all agree to the terms of Brian-Weston: Paules's self executing agreement and each owes treble damages in the amount of $580,000.00, which is three times the original amount of $145,000.00 plus the original amount tendered and held by the Escrow Agent.

11. That the Respondents, Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage et al. all agree to the terms of Brian-Weston: Paules's self executing agreement and agree to grant Power of Attorney to Brian-Weston: Paules to settle account 3974745-6 and collect above referenced treble damages for True, Principal of CitiMortgage, and Sanjiv Das , President/ CEO of CitiMortgage, Inc., et al., which includes, but not limited to filing mortgage satisfaction, UCC lien against your personal property or any other mean to collect the treble damages in the amount of $580,000.00.

12. That the Respondents, Sanjiv Das , President/ CEO of CitiMortgage, Inc., servicing agent of CitiMortgage et al. all agree to the terms of Brian-Weston: Paules's self executing agreement and agree that may collect by selling off CitiMortgage and CitiMortgage, Inc.'s property without your protest and without further notice to you.

13. NOTARY ACCEPTOR and Escrow Agent further sayeth naught.

SUBSCRIBED AND SWORN

_Alona A Thompson_      _4/19/11_

NOTARY ACCEPTOR, Acting Escrow Agent      Date

*Valid where prohibited by law*

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 34 of 78 PageID #: 38

[Notes: Notary Public GLORIA J. THOMPSON is not an surety forwarding parties her in this matt and has not given legal advice or arranged that for legal advice. She has provided no reference in the preparation of the above referenced instrument, and has no interest for any forward financial therein. GLORIA J. THOMPSON is NOT a party to this action and is ONLY acting from authorized capacity as Notary and witness to execution for listed herewith the parties.]

Pinellas County    )
                  )   ss.   **JURAT**
Florida Republic    )

I __Maryellen Waskie__ , the Notary Public in and for the above state and county, do attest and swear that on this 15 day of __April__ , 2011 that Gloria J. Thompson personally appeared before me, and on the basis of satisfactory evidence proved to be the person(s) who attested and subscribed to the within instrument, by the above-named parties' unlimited commercial liability, as true, correct, complete and not misleading. Witness my hand and seal this 15 day of __April__ , 20 11

_Maryellen Waskien_
Notary Public

My Commission Expires: __2-18-2013__

MARYELLEN WASKOWSKI
Notary Public - State of Florida
My Comm. Expires Feb 18, 2013
Commission # DD 853009

Page 3 of 3

## CERTIFICATE OF SERVICE

I hereby certify that on this __18__ day of __MAY__, 2011, a copy of the foregoing

Answer to Complaint in Mortgage Foreclosure was served by first class mail, postage prepaid on

the following:

    Allison F. Wells, Esquire
    Phelan Hallinan & Schmieg, LLP
    1617 JFK Boulevard, Suite 1400
    Philadelphia, PA 19103

2011 MAY 18 PM 3: 24
JUDICIAL CEN...
YORK, PA.
...CE OF PROTHONOTARY

                    BLAKEY, YOST BUPP & RAUSCH, LLP

By: _____

                      John J. Baranski, Jr., Esquire
                      Supreme Ct. I.D. No. 82585
                      17 East Market Street
                      York, Pennsylvania 17401
                      jbaranski@blakeyyost.com
                      (717) 845-3674
                      Attorney for Defendants

Phelan Hallinan & Schmieg, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103
215-563-7000

Attorney For Plaintiff

| | |
|---|---|
| CITIMORTGAGE, INC., S/B/M TO PRINCIPAL RESIDENTIAL MORTGAGE, INC. : Plaintiff : : vs : : BRIAN W. PAULES : NINA L. PAULES : Defendant | Court of Common Pleas Civil Division YORK County No. 2011-SU-1542-06 |

## PRAECIPE

TO THE PROTHONOTARY:

__X__ Please withdraw the complaint and mark the action Discontinued and Ended without prejudice.

_____ Please mark the above referenced case Settled, Discontinued and Ended.

_____ Please Vacate the judgment entered and mark the action Discontinued and Ended without prejudice.

_____ Please mark the in rem judgment Satisfied and the action Discontinued and Ended.

Date: 10/3/11

PHELAN HALLINAN & SCHMIEG, LLP

By: _____

Lawrence T. Phelan, Esq., Id. No. 32227
Francis S. Hallinan, Esq., Id. No. 62695
Daniel G. Schmieg, Esq., Id. No. 62205
Michele M. Bradford, Esq., Id. No. 69849
Judith T. Romano, Esq., Id. No. 58745
Sheetal R. Shah-Jani, Esq., Id. No. 81760
Jenine R. Davey, Esq., Id. No. 87077
Lauren R. Tabas, Esq., Id. No. 93337
Vivek Srivastava, Esq., Id. No. 202331
Jay B. Jones, Esq., Id. No. 86657
Peter J. Mulcahy, Esq., Id. No. 61791
Andrew L. Spivack, Esq., Id. No. 84439
Chrisovalante P. Fliakos, Esq., Id. No. 94620
Joshua I. Goldman, Esq., Id. No. 205047
Courtenay R. Dunn, Esq., Id. No. 206779
Andrew C. Bramblett, Esq., Id. No. 208375
Allison F. Wells, Esq., Id. No. 309519
William E. Miller, Esq., Id. No. 308951
Melissa J. Scheiner, Esq., Id. No. 308912
Attorneys for Plaintiff

PHS# 265670

2011 OCT -4 AM 11: 12
PROTHONOTARY
JUDICIAL CENTER
YORK, PA

PHELAN HALLINAN & SCHMIEG, LLP
One Penn Center at Suburban Station
1617 John F. Kennedy Boulevard, Suite 1400
Philadelphia, PA 19103-1814
(215) 563-7000

ATTORNEY FOR PLAINTIFF

CITIMORTGAGE, INC., S/B/M TO PRINCIPAL
RESIDENTIAL MORTGAGE, INC.
      Plaintiff

Court of Common Pleas

Civil Division

    vs

YORK County

BRIAN W. PAULES
NINA L. PAULES
    Defendant

No. 2011-SU-1542-06

### CERTIFICATION OF SERVICE

I hereby certify true and correct copies of the foregoing Plaintiff's Praecipe was served by regular mail to the person(s) on the date listed below:

JOHN J. BARANSKI, JR., ESQUIRE
17 EAST MARKET STREET
YORK, PA 17401

Date: 10/3/11

By: _____

Lawrence T. Phelan, Esq., Id. No. 32222
Francis S. Hallinan, Esq., Id. No. 62695
Daniel G. Schmieg, Esq., Id. No. 62205
Michele M. Bradford, Esq., Id. No. 69849
Judith T. Romano, Esq., Id. No. 58745
Sheetal R. Shah-Jani, Esq., Id. No. 81760
Jenine R. Davey, Esq., Id. No. 87077
Lauren R. Tabas, Esq., Id. No. 93337
Vivek Srivastava, Esq., Id. No. 202331
Jay B. Jones, Esq., Id. No. 86657
Peter J. Mulcahy, Esq., Id. No. 61791
Andrew L. Spivack, Esq., Id. No. 84439
Chrisovalante P. Fliakos, Esq., Id. No. 94620
Joshua I. Goldman, Esq., Id. No. 205047
Courtenay R. Dunn, Esq., Id. No. 206779
Andrew C. Bramblett, Esq., Id. No. 208375
Allison F. Wells, Esq., Id. No. 309519
William E. Miller, Esq., Id. No. 308951
Melissa J. Scheiner, Esq., Id. No. 308912
Attorney for Plaintiff

PROTHONOTARY
JUDICIAL CENTER
YORK, PA
2011 OCT -4 AM 11:12

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 38 of 78 PageID #: 42

**PHELAN HALLINAN & SCHMIEG, LLP**
One Penn Center at Suburban Station
1617 John F. Kennedy Boulevard
Suite 1400
Philadelphia, PA 19103-1814
215-563-7000
Fax: 215-563-3352

Foreclosure Department

Representing Lenders in
Pennsylvania and New Jersey

---

Office of the Prothonotary
YORK County

RE:   CITIMORTGAGE, INC., S/B/M TO PRINCIPAL RESIDENTIAL
MORTGAGE, INC. v. BRIAN W. PAULES and NINA L. PAULES
YORK County, CCP, No. 2011-SU-1542-06, PHS# 265670

Dear Sir/Madam:

Enclosed for filing is Plaintiff's Praecipe.  Please file the Praecipe and return a
time-stamped copy in the enclosed self-addressed, stamped envelope.

Thank you for your assistance in this matter.

Very truly yours,

Praecipe Department
Cc:      JOHN J. BARANSKI, JR., ESQUIRE

* Please be advised that this firm is a debt collector attempting to collect a debt. Any information
received will be used for that purpose. If you have previously received a discharge in bankruptcy
and this debt was not reaffirmed, this correspondence is not and should not be construed to be an
attempt to collect a debt, but only enforcement of lien against property.

PROTHONOTARY
2011 OCT -4  AM 11: 12
JUDICIAL CENTER
YORK, PA

Respond To: Gloria J. Thompson, Notary Public
c/o P.O. Box 16251
St. Petersburg, FL 33733-6251

For: Elizabeth E. Huff-Crockett
2915 Woodlawn Dr
Nashville, TN 37215

Date: July 11, 2011

Certified Mail # 70110470000207805828
RETURN RECEIPT REQUESTED



FILED

2012 FEB 29 PM 2: 49

RICHARD R. ROOKER. CLERK

_____ D.C.

To: Robert G. Wilmars
M&T Bank Corp.
10 Commerce Drive
Cranford, NJ 07016

Jeffrey Schmid
Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

Re: Account # 0009456682 (hereinafter the subject loan and is the reference for all questions and requests described below).

### QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e.**

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. I worry that potential fraudulent and deceptive business practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to. Evidence of such practices are evidenced below:

> **GMAC L.L.C.** - Updated: Sept. 27, 2010 - *In September 2010, GMAC admitted it had violated legal rules in its rush to file foreclosures as quickly as possible and announced it was imposing a moratorium on many of them as it tried to ensure they were done correctly. GMAC declined to provide any details or answer questions, but its actions suggested that it was concerned about potential liability in evicting families and selling houses to which it did not have clear title. The company also said it was reviewing completed foreclosures where the same unnamed procedure might have been used. The issue has broad consequences for the millions of buyers of foreclosed homes, some of whom might not have clear title to their bargain property. And it may offer unforeseen opportunities for those who were evicted.* http://topics.nytimes.com/topics/news/business/companies/gmac-llc/index.html?inline=nyt-org

> **Bank of America** - October 8, 2010 - Bank of America, Arizona's largest home-mortgage lender, said Friday that it has extended a 23-state moratorium on bank-owned home sales to all 50 states while bank officials scrutinize the way they process foreclosures.

> **JPMorgan Chase & Company** - JPM: NYSE; Financials/Banks - Updated: Oct. 13, 2010 - Morgan's Chase Retail Services announced earlier this month that as many as 56,000 of its mortgages had documentation problems, prompting

Page 1 of 9

PLTF EXHIBIT 2

calls for an industry wide investigation and a national moratorium on foreclosures.
http://topics.nytimes.com/top/news/business/companies/morgan_j_p_chase_and_company/index.html?inline=nyt-org

**All 50 States Start Inquiry Into Foreclosures** - Published: October 13, 2010 - As the nation's attorneys general announced a joint investigation into flawed paperwork filed to support home foreclosures, federal housing regulators urged lenders Wednesday to vet their foreclosure procedures and fix them.

UPDATE 10/23/10 - **Georgia Class Action against MERS**
UPDATE 10/25/10 **California and Tennessee Class action Against MERS**


In light of this information I hereby **demand absolute 1st hand evidence** from you of the original unaltered uncertificated or certificated security regarding account # 0009456682. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased the amounts of monthly payments;
- Increased the principal balance I owe;
- Increased the escrow payments;
- Increased the amounts applied and attributed toward interest on this account;
- Decreased the proper amounts applied and attributed toward the principal on this account; and/or
- Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account # 0009456682 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by me and others to ensure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;
2. That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;
3. That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;
4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;
5. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the

terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

7. That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

8. That interest and principal have been properly calculated and applied to this loan;

9. That any principal balance has been properly calculated, amortized and accounted for;

10. That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.


In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account # 0009456682:


1. Any certificated or uncertificated security used for the funding of this account;

2. Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3. Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4. Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5. Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6. Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7. Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8. Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9. Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11. Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12. Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13. Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;


Please also send me copies, front and back, of:


1. Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust and any Note in this matter;

2. Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust and any Note;

3. Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust and any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

4. Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust and any Note;

5. Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust and any Note;

6. Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust and any Note;

7. Any documentation evidencing the Mortgage/Deed of Trust is not a constructive trust or any other form of trust;

8. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

9. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

10. All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 42 of 78 PageID #: 46

11. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.
12. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.
13. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.
14. All escrow analyses conducted on this account from the inception of this account until the date of this letter.
15. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.
16. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.
17. All letters, statements and documents sent to me by your company.
18. All letters, statements and documents sent to me by agents, attorneys or representatives of your company.
19. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, attorney or other representative of your company.
20. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.
21. All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.
22. All copies of property inspection reports, appraisals, BPOs and reports done on my property.
23. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.
24. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.
25. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.
26. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.
27. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

**In regards to Account Accounting and Servicing Systems:**

1. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.
2. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.
3. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

**In regards to Debits and Credits:**

1. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.
2. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.
3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.
4. For each transaction code, please provide the master transaction code list used by you or previous servicers.

**In regards to Mortgage and Assignments:**

1. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

Page 4 of 9

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 43 of 78 PageID #: 47

2. If not, why?
3. Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?
4. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?
5. If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1. Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?
2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.
3. Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?
4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.
5. Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?
6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.
7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.
8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.
9. Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.
10. Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.
11. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.
12. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.
13. Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?
14. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?
15. How much total in attorney fees have been assessed to this account from the inception to the present date?
16. How much total in attorney fees have been collected from this account from the inception to the present date?
17. How much total in attorney fees have been charged to this account from the inception to the present date?
18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?
2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.
3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to Late Fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?
2. Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?
4. Are late fees considered interest? Yes or No?
5. Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.
6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?
7. If yes, please describe what expenses or damages were charged or assessed to this account.
8. Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.
9. Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.
10. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.
11. Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.
12. Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.
13. Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.
14. Has interest been charged on any late fee assessed or charged to this account? Yes or No?
15. Is interest allowed to be assessed or charged on late fees to this account? Yes or No?
16. Have any late charges been assessed to this account? Yes or No?
17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?
18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.
19. Have late charges been collected on this account from the inception of this account to the present date? Yes or No?
20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?


**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?
2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.
3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.
4. Please tell me the price charged for each property inspection.
5. Please tell me the date of each property inspection.
6. Please tell me the name and address of each company and person who conducted each property inspection on my property.
7. Please tell me why property inspections were conducted on my property.
8. Please tell me how property inspections are beneficial to me.
9. Please tell me how property inspections are protective of my property.
10. Please explain to me your policy on property inspections.
11. Do you consider the payment of inspection fees as a cost of collection? Yes or No?
12. If yes, why?
13. Do you use property inspections to collect debts? Yes or No?
14. Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?
15. If yes, please answer when and why?
16. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.
17. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?
18. If yes, why?
19. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?
20. If yes, why?
21. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.
22. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.
23. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?
24. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?
25. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?
26. If yes, when and how much was charged?
27. Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?
28. How much total in inspection fees has been assessed to this account from the inception of this account to the present date?
29. How much total in inspection fees has been collected on this account from the inception of this account to the present date?
30. Please forward to me copies of all property inspections made on my property in this mortgage account file.
31. Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 45 of 78 PageID #: 49

**In regards to BPO Fees:**

1. Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?
2. If your answer is no, you can skip the rest of the questions in this section concerning BPOs.
3. If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.
4. Please tell me the price of each BPO.
5. Please tell me who conducted the BPO.
6. Please tell me why BPOs were conducted on my property.
7. Please tell me how BPOs are beneficial to me.
8. Please tell me how BPOs are protective of my property.
9. Please explain your policy on BPOs.
10. Have any BPO fees been assessed to this account? Yes or No?
11. If yes, how much in total BPO fees have been charged to this account?
12. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.
13. Please send to me copies of all BPO reports that have been done on my property.
14. Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1. Have you placed or ordered any force-placed insurance policies on my property?
2. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.
3. Please tell me the price of each policy.
4. Please tell me the agent for each policy.
5. Please tell me why each policy was placed on my property.
6. Please tell me how the policies are beneficial to me.
7. Please tell me how the policies are protective of my property.
8. Please explain to me your policy on force-placed insurance.
9. Have any force-placed insurance fees been assessed to this account? Yes or No?
10. If yes, how much in total force-placed insurance fees have been assessed to this account?
11. Have any force-placed insurance fees been charged to this account? Yes or No?
12. If yes, how much in total force-placed insurance fees have been charged to this account?
13. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of force-placed insurance fees from me.
14. Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.
15. Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.
16. Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.
17. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?
18. Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?
2. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?
3. Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.
4. Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.
5. Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 46 of 78 PageID #: 50

6. Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.
7. Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.
8. Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.
9. Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.
10. Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.
11. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.
12. Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?
13. Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.
14. Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.
15. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.
16. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.
17. How much was paid for this individual mortgage account by you?
18. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?
19. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?
20. Who did you issue a check or payment to for this mortgage loan?
21. Please provide me with copies of the front and back of the canceled check.
22. Did any investor approve of the foreclosure of my property? Yes or No?
23. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?
24. Provide any and all due diligence reports by a separate due diligence firm in regards to any pooling agreements that have been generated.
25. Please identify all persons who approved the foreclosure of my property.


Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

**Default Provisions under this QUALIFIED WRITTEN REQUEST**

Mutual of Omaha Bank and M&T Bank Corp., et al. or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Elizabeth E. Huff-Crockett or any property or collateral connected to Elizabeth E. Huff-Crockett or account # 0009456682 and waives any and all immunities or defenses in claims or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1. Elizabeth E. Huff-Crockett's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment Mutual of Omaha Bank and M&T Bank Corp. may have or may have had in connection with account # 0009456682 and any property and/or real estate connected with account # 0009456682.
2. Elizabeth E. Huff-Crockett's right to have any certificated or uncertificated security re-registered in Elizabeth E. Huff-Crockett's, and only Elizabeth E. Huff-Crockett's name.
3. Elizabeth E. Huff-Crockett's right of collection via Mutual of Omaha Bank and M&T Bank Corp.'s et al. liability insurance and/or

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 47 of 78 PageID #: 51

bond.

4. Elizabeth E. Huff-Crockett's entitlement in filing and executing any instruments, as power of attorney for and by Mutual of Omaha Bank and M&T Bank Corp., including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Mutual of Omaha Bank and M&T Bank Corp. are located.

5. Elizabeth E. Huff-Crockett's right to damages because of Mutual of Omaha Bank and M&T Bank Corp.'s et al. wrongful registration, breach of intermediary responsibility with regard to Elizabeth E. Huff-Crockett's asset by Mutual of Omaha Bank and M&T Bank Corp., issuing to Elizabeth E. Huff-Crockett a certified check for the original value of Elizabeth E. Huff-Crockett's monetary instrument.

6. Elizabeth E. Huff-Crockett's right to have account # 0009456682 completely set off because of Mutual of Omaha Bank and M&T Bank Corp.'s wrongful registration, breach of intermediary responsibility with regard to Elizabeth E. Huff-Crockett's monetary instrument/asset by Mutual of Omaha Bank and M&T Bank Corp. sending confirmation of set off of wrongful liability of Elizabeth E. Huff-Crockett and issuing a certified check for the difference between the original value of Elizabeth E. Huff-Crockett's monetary instrument/asset and what Elizabeth E. Huff-Crockett mistakenly sent to M&T Bank Corp. as a payment for such wrongful liability.

Mutual of Omaha Bank, M&T Bank Corp., et al. or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Mutual of Omaha Bank and M&T Bank Corp. in accordance with Mutual of Omaha Bank and M&T Bank Corp.'s Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. Any other method of posting other than to the Notary herein will be considered a Non-Response. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Mutual of Omaha Bank and M&T Bank Corp.'s judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: Should Mutual of Omaha Bank and M&T Bank Corp. fail by not rebutting to any part of this RESPA REQUEST, agrees to grant unto Elizabeth Ellen Crockett unlimited Power of Attorney, with full authorization to sign and endorse Mutual of Omaha Bank and/or M&T Bank Corp.'s et al. names upon any instrument required to satisfy the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligation of this agreement. Consent and agreement with this Power of Attorney by Mutual of Omaha Bank and M&T Bank Corp. et al. waives any and all claims of Elizabeth E. Huff-Crockett, and/or defenses and remains in effect until all obligations by Mutual of Omaha Bank and/or M&T Bank Corp. have been satisfied.

Sincerely,

Elizabeth E. Huff-Crockett

Elizabeth-Ellen: Crockett, agent for ELIZABETH E. HUFF-CROCKETT

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 48 of 78 PageID #: 52

 **USPS.COM**                                        Search USPS.com or Track Packages

Quick Tools          Ship a Package          Send Mail          Manage Your Mail          Shop          Business Solutions

# Track & Confirm

GET EMAIL UPDATES     PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| | First-Class Mail® | Delivered | July 14, 2011, 10:54 am | OMAHA, NE 68131 | Expected Delivery By: July 14, 2011 Certified Mail™ Return Receipt |
| | | Processed through USPS Sort Facility | July 14, 2011, 6:41 am | OMAHA, NE 68108 | |
| | | Acceptance | July 11, 2011, 1:07 pm | NASHVILLE, TN 37205 | |

### Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›





2012 FEB 29 PM 2: 49

RICHARD R. ROOKER. CLERK

_____D.C.



**TERI LEE, Plaintiff, v. EQUIFIRST CORP., HOMEQ SERVICING CORP., QUANTUM SERVICING CORP., SUTTON FUNDING, LLC, ROOSEVELT MORTGAGE ACQUISITION CO., and WELLS FARGO, N.A., Defendants.**

**Case No. 3:10-cv-809**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION**

**2011 U.S. Dist. LEXIS 45458**

**April 25, 2011, Filed**

**PRIOR HISTORY:** Lee v. EquiFirst Corp., 2010 U.S. Dist. LEXIS 114396 (M.D. Tenn., Oct. 26, 2010)

**COUNSEL:** [*1] For Teri Lee, Plaintiff: Charles W. Faquin, Christopher K. Thompson, Thompson Law Group, PLLC, Nashville, TN.

For EquiFirst Corp., Defendant: Kenneth P. Jones, Bourland, Heflin, Alvarez & Minor, PLC, Memphis, TN.

For HomeqServicing Corp., Sutton Funding, LLC, Defendants: James Alfred DeLanis, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC-Nashville, Nashville, TN; Joanna C. Gordon, Worrick G. Robinson, IV, Robinson, Reagan & Young, P.C., Nashville, TN.

For Quantum Servicing Corp., Roosevelt Mortgage Aquisition Co., Defendants: Thomas K. Potter, III, LEAD ATTORNEY, James Auman Haltom, Burr & Forman, LLP, Nashville, TN;

Janine L. Smith, PRO HAC VICE, Rik S. Tozzi, Stephen J. Bumgarner, Burr & Forman, LLP, Birmingham, AL.

For Wells Fargo, N.A., Defendant: James Auman Haltom, Burr & Forman, LLP, Nashville, TN; Rik S. Tozzi, Stephen J. Bumgarner, Burr & Forman, LLP, Birmingham, AL.

**JUDGES:** ALETA A. TRAUGER, United States District Judge.

**OPINION BY:** ALETA A. TRAUGER

**OPINION**

**MEMORANDUM**

Pending before the court is the Motion for Summary Judgment filed by defendant Equi-First Corp. (Docket No. 64), to which the plaintiff has filed a response (Docket No. 68), and in support of which the defendant has filed a reply (Docket No. [*2] 74). For the reasons dis-

PLTF APPENDIX-APPA

cussed below, the defendant's motion will be denied.

## BACKGROUND

Plaintiff Teri Lee took out two mortgage loans, the larger of which was for $152,000 (the "Primary Loan"), to purchase her residence in Nashville, Tennessee. [1] Eventually, she missed payments on the Primary Loan. This action arises from the resulting foreclosure.

> 1 Unless otherwise noted, the facts are drawn from the parties' statements of undisputed facts (Docket No. 64, Ex. 1; Docket No. 68, Ex. 1). The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

At the March 2, 2007 closing of the plaintiff's home purchase, defendant EquiFirst Corp. ("EquiFirst") held the promissory notes and the servicing rights to both loans. The Amended Complaint alleges that, on May 1, 2007, EquiFirst assigned the servicing rights of the loans to defendant HomEq Servicing Corp. ("HomEq"). (Docket No. 50 ∂ 12.)

The plaintiff's deed of trust required her to carry an insurance policy on her property, and she allegedly maintained sufficient coverage for the duration of the [*3] loans. (*Id.* ∂ 25.) The plaintiff alleges that on two occasions -- May 13, 2008 and October 14, 2008 -- HomEq charged her for additional, unnecessary insurance policies, because it failed to discover that she already had insurance. (*Id.* ∂∂ 27-28.) These charges totaled approximately $4,700, and this expense allegedly caused the plaintiff to fall behind on her loan payments. (*Id.* ∂∂ 27-28, 34.)

On February 25, 2009, the plaintiff allegedly received a notice of acceleration of the

Primary Loan from a law firm, identifying the current creditor as defendant Sutton Funding, LLC ("Sutton"). (*Id.* ∂ 35.) The next month, Lee received a notice of foreclosure from the same law firm. (*Id.*)

At that point, the plaintiff called HomEq, which allegedly offered her a forbearance agreement. Under the proposed plan, the plaintiff would immediately pay $3,500 and would then pay increased monthly payments until November 2009, at which point her account would be current. (*Id.* ∂∂ 36-37.) The plaintiff alleges that she accepted these terms and signed an agreement (the "Forbearance Agreement") with HomEq on March 27, 2009. (*Id.*) The agreement provided that it would be binding upon the parties' "successors and assigns." [*4] (*Id.* ∂ 39.)

On May 15, 2009, after accepting the plaintiff's up-front payment and first increased monthly payment, HomEq allegedly transferred the servicing rights for the Primary Loan to defendant Quantum Servicing Corp. ("Quantum"). (*Id.* ∂ 38.) Shortly thereafter, the plaintiff received a "Validation of Debt" letter from Quantum, listing defendant Roosevelt Mortgage Acquisition Co. ("Roosevelt") as the current creditor. (*Id.* ∂ 40.) The letter informed her that she was more than $6,900 in arrears, and it did not reference the Forbearance Agreement. (*Id.* ∂ 40.)

Quantum allegedly never recognized the Forbearance Agreement. The plaintiff claims that the amounts she paid HomEq under the Forbearance Agreement left her unable to pay the balance that Quantum asserted was due. (*Id.* ∂∂ 42-43.) Ultimately, on March 24, 2010, after several months of communications with Quantum and its law firm, the plaintiff's home was sold at a foreclosure sale.

The plaintiff asserts three causes of action: (1) negligence by HomEq for charging her for unnecessary insurance; (2) negligence by HomEq and Quantum for failing to ensure that

the Forbearance Agreement was honored when the servicing of her loan was transferred [*5] between those companies; and (3) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. ß 2601 *et seq.*, by Quantum, for failing to **respond** to several "**qualified written requests**" in the months before the foreclosure. [1] (*Id.* ∂∂ 24-76.) The plaintiff alleges that EquiFirst is vicariously liable, as the creditor of the Primary Loan and as the principal of HomEq and Quantum, for the first two causes of action. (*Id.* ∂∂ 30, 46, 52.)

> 2    The Amended Complaint does not explicitly set out a claim for wrongful foreclosure, although it does allege that the defendants' negligence "helped facilitate the eventual wrongful foreclosure of her home." (Docket No. 50 ∂ 34; *see also id.* ∂ 54.)

The deed of trust for the plaintiff's property was recorded by Mortgage Electronic Registering Service ("MERS"), of which all of the defendants are members. This allegedly made it difficult for the plaintiff to determine which defendant was the creditor for the Primary Loan at any given time. (Docket No. 50 ∂ 20.) The plaintiff alleges that "[m]embers of MERS do not publicly list this information in the MERS system, which they use to avoid listing the chain of title in the county registry." (*Id.* [*6] ∂ 19.)

Defendant EquiFirst previously filed a Motion to Dismiss, arguing, in relevant part, that it sold both of the plaintiff's mortgage loans before any of the **servicers'** alleged negligence had occurred. In support of that motion, the defendant filed the declaration of Karen L. Stacy, an EquiFirst Vice President. (Docket No. 18.) In response, the plaintiff requested more time for discovery.

In ruling on the Motion to Dismiss, the court declined to consider the defendant's extrinsic evidence. (Docket No. 28 at 7 n.2.) The court held that EquiFirst, as mortgagee, could

be held vicariously liable for actions taken by HomEq, as **servicer**. (*Id.* at 8.) It also found that the plaintiff's initial Complaint contained sufficient allegations that EquiFirst was the creditor when HomEq charged the plaintiff for insurance. (*Id.* at 6-7.) There were no allegations, however, suggesting that EquiFirst was the creditor after February 2009; thus, the court dismissed all claims against EquiFirst, except for the negligence claim related to insurance. (*Id.* at 7.)

The court stated that, "if the evidence ultimately shows that EquiFirst did sell the loans in March 2007, then [EquiFirst] will not be held liable [*7] for actions taken by the **servicer** in 2008." (*Id.* at 8.) It further noted that, "[i]f discovery ultimately shows that EquiFirst owned the loan at a later date, the plaintiff may move to amend her Complaint as necessary to re-assert the relevant claims against EquiFirst." (*Id.* at 7 n.3.) The plaintiff did subsequently file an Amended Complaint, which, as mentioned above, alleges that EquiFirst is vicariously liable for HomEq's negligence regarding the insurance and for HomeEq's and Quantum's negligence in handling the Forbearance Agreement.

EquiFirst has now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Relying exclusively on the previously filed declaration of Karen L. Stacy, the defendant once again argues that it was not the creditor on the Primary Loan when the **servicers'** alleged negligence occurred.

## ANALYSIS

### I. Summary Judgment Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least [*8] one

essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan,* 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson,* 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan,* 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

## II. EquiFirst's Sale of the Loans

The instant dispute boils down to the factual [*9] issue of when, exactly, EquiFirst sold the plaintiff's loans. The defendant argues that Karen L. Stacy's declaration shows that it sold the loans on March 30, 2007, so it was not liable for HomEq's or Quantum's subsequent negligence. The plaintiff argues that her own evidence shows that EquiFirst still owned the loans on May 14, 2007 and February 20, 2009.

Stacy's declaration states that, "[o]n March 30, 2007, EquiFirst sold both of the [plaintiff's mortgage] Loans to Sutton Funding, LLC," and, "[o]n May 1, 2007, EquiFirst transferred the servicing of both of the Loans to HomEq Servicing Corporation." (Docket No. 18 ∂∂ 3, 5.) The declaration further states:

EquiFirst was not, at any point in time, the creditor on the Loans during the periods of time in which the Loans were serviced by HomEq Servicing Corporation or by Quantum Servicing Corporation. . . . After EquiFirst transferred the servicing of both Loans to HomEq Servicing Corporation on May 1, 2007, EquiFirst did not have, and EquiFirst continues to not have any ownership interest in the two Loans or the two corresponding liens on the subject property.

(*Id.* ∂∂ 6-7.) But, "[b]ecause MERS was the beneficiary on the relevant security [*10] instruments, no assignment was prepared or recorded in the Register's Office of Davidson County, Tennessee." (*Id.* ∂ 4.)

In opposing the assertions contained in this declaration, the plaintiff relies on several documents. First, the plaintiff has submitted two "Validation of Debt" letters that she received from HomEq, one for each loan, both dated May 14, 2007. These letters, which are dated six weeks after EquiFirst's claimed sale date, state that HomEq "is responsible for providing monthly remittance processing . . . on behalf of *the current owner of the loan EquiFirst.*" (Docket No. 68, Exs. 3-4 (emphasis added).) The plaintiff has also submitted five largely identical notice-of-default letters from HomEq, dated February 15, 2008, August 15, 2008, October 16, 2008, January 19, 2009, and February 19, 2009, each of which states that "Barclays Bank PLC" is the Primary Loan's "current creditor/owner." (*Id.,* Exs. 6-7.) The plaintiff points out that EquiFirst, which was formally dissolved as of June 2010, was owned, via a string of wholly owned subsidiaries, by Barclays Bank PLC ("Barclays"). [1] (*See* Docket No. 4 at 1 (EquiFirst's corporate disclosure statement).)

statement).) Finally, the plaintiff has [*11] submitted a document included in HomEq's initial disclosures titled "Communication History," which appears to be an internal log of events and communications related to the plaintiff's loan file. (Docket No. 68, Ex. 5.) It contains an entry, dated February 20, 2009, labeled "comment log." In the "description" column, the entry states: "INVESTOR 394 EQUIFIRST BBPLC FORECLOSURE IN THE NAME OF: BARCLAYS CAPITAL." (*Id.*)

> 3 The plaintiff's Amended Complaint added Barclays as a defendant. (*See* Docket No. 50 ∂ 7.) Soon after, however, the plaintiff voluntarily dismissed Barclays without prejudice, because she was unable to serve process on it. (Docket No. 59.)

The court finds that, at least at this stage in the litigation, the plaintiff's documents are sufficient to create a genuine issue for trial regarding when EquiFirst sold the loans. Significantly, the defendant's sole piece of evidence is the self-serving declaration of its own employee, which contains the bare assertion that EquiFirst sold the loan to Sutton in March 2007. The defendant has not, for example, attached any supporting documentary evidence of that sale or submitted any relevant testimony from Sutton or HomEq.

In opposition, [*12] the plaintiff has produced a letter from HomEq stating that EquiFirst was still the creditor in May 2007. [4] Furthermore, the "Communication History" document states that, as of February 2009, the "investor" for the plaintiff's loan was "EQUI-FIRST BBPLC." Presumably, "BBPLC" refers to Barclays Bank PLC. The document is ambiguous, but, construed in the light most favorable to the plaintiff (particularly in the absence of countervailing evidence regarding the proper interpretation of the document), it indicates that EquiFirst had some interest in the loan as of February 2009. It also suggests that HomEq

might have equated EquiFirst with Barclays Bank PLC in its records. In that event, the five notice-of-default letters naming Barclays as the Primary Loan's creditor might support the conclusion that EquiFirst owned the loan throughout 2008 and early 2009.

> 4 EquiFirst argues that this letter, which was not created by EquiFirst, was mistaken. (Docket No. 74 at 9.) Although that is certainly possible, at summary judgment, the court must view the evidence in the light most favorable to the plaintiff; thus, the court cannot simply assume that the letter contained mistakes.

In sum, after reviewing [*13] the parties' evidence, a reasonable juror could conclude that EquiFirst owned the loans during the relevant time periods. On this record, summary judgment is inappropriate. [5] Moreover, although the plaintiff does not argue that she needs time for additional discovery, the court believes that the defendant's Motion for Summary Judgment is premature. The parties have not had a full and fair opportunity to engage in discovery. In fact, a discovery deadline has not even been set in this case, for various reasons apparent in the case record. Given the apparent lack of transparency regarding which defendant owned the plaintiff's loans at any given time, the court believes that it would be inappropriate to resolve the instant factual issue before the close of discovery.

> 5 The defendant argues that the plaintiff does not oppose entry of summary judgment in favor of EquiFirst on her RESPA and wrongful foreclosure claims. (Docket No. 74 at 2.) But the Amended Complaint does not seek to hold EquiFirst liable for any RESPA violations, and it does not contain a separate wrongful foreclosure claim. (*See* Docket No. 50 ∂∂ 55-76.)

The defendant further argues that, because the plaintiff's brief does not [*14] sufficiently address the issue, she has waived any argument that EquiFirst is vicariously liable for the **servicers'** negligence regarding the Forbearance Agreement. (Docket No. 74 at 8.) The court disagrees. First, the defendant's initial motion papers did not mention the plaintiff's Forbearance Agreement claim, so the plaintiff could not possibly have waived any arguments by failing to discuss that claim. Second, the plaintiff argues that the "Communication History" document shows that EquiFirst owned the loan in February 2009, the month before she signed the Forbearance Agreement. The clear implication is that Equi-First owned the loans during the time period relevant to the Forbearance Agreement claim.

Finally, the defendant argues that the court must disregard the plaintiff's documents because she has not properly authenticated them. (Docket No. 74 at 6-7.) It is true that, at summary judgment, parties must submit evidence that would be admissible at trial. *See* Fed. R. Civ. P. 56(c), (e). Federal Rule of Evidence 901 requires that, to be admissible, documents must be accompanied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." [*15] Fed. R. Evid. 901(a); *see also id.* 901(b)(1) (explaining that a matter can be authenticated by "[t]estimony [from a witness with knowledge] that a matter is what it is claimed to be"). Consequently, the Sixth Circuit has repeatedly stated that documents submitted in support of a summary judgment brief must be properly authenticated. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (noting the Sixth Circuit's "repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)"); *Baughman v. Battered Women, Inc.*, 211 Fed. Appx. 432, 441 n.5 (6th Cir. 2006) ("[T]he documents Plaintiffs submitted in support of

their opposition motion were neither signed nor authenticated and, therefore, are inadmissible evidence for purposes of summary judgment."); *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 532 (6th Cir. 2002) ("[The] memo [submitted by the defendant] was not accompanied by an affidavit or document that attested to its validity or authenticity. . . . '[D]ocuments submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.'").

But Federal Rule of Civil Procedure 56, [*16] as amended effective December 1, 2010, provides that, "[i]f a party fails to properly support an assertion of fact," the court may "give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e)(1). The Advisory Committee's notes to the 2010 amendments state that, "[i]n many circumstances[,] this opportunity will be the court's preferred first step." Here, nothing suggests that the documents submitted by the plaintiff are actually inauthentic, and the defendant does not dispute that the plaintiff *can* authenticate the documents. Indeed, the Bates label on the "Communication History" document clearly indicates that it was produced by defendant HomEq. (*See* Docket No. 68, Ex. 5.) Accordingly, the court will give the plaintiff an opportunity to submit declarations authenticating the documents. [6]

> 6 It should be enough (1) for the plaintiff to declare that the letters are true copies of letters that she received and (2) for her attorney to declare that the Bates-labeled documents are true copies of documents that HomEq produced in its initial disclosures.

## CONCLUSION

For all of the reasons discussed above, the defendant's Motion for Summary Judgment will be denied, although [*17] EquiFirst is free

to file a renewed motion after the close of discovery. The plaintiff will be ordered to file declarations that properly authenticate the documents that she submitted in support of her summary judgment opposition.

An appropriate order will enter.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

## ORDER

For the reasons stated in the accompanying Memorandum, the Motion for Summary Judgment filed by defendant EquiFirst Corp.

(Docket No. 64) is **DENIED.** The plaintiff is **ORDERED** to file, no later than April 29, 2011, a declaration (or declarations) authenticating the documents that she submitted in support of her summary judgment opposition. If EquiFirst has any objections to the authenticating declaration, it must file those objections no later than May 6, 2011.

It is so ordered.

Entered this 25th day of April 2011.

/s/ Aleta A. Trauger

ALETA A. TRAUGER

United States District Judge

ELIZABETH E. HUFF-CROCKETT
2915 Woodlawn Dr
Nashville, TN 37215

July 11, 2011

Certified Mail No.: 70110470000207805811

Robert G. Wilmers
M&T Bank Corp.
10 Commerce Drive
Cranford, NJ 07016

Jeffrey Schmid
Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

FILED

2012 FEB 29  PM 2: 50

RICHARD R. ROOKER, CLERK

_____ D.C.

Dear Sir or Madam:

Upon careful review with counsel of the closing documents and subsequent billing statements appertaining to the account referenced below, we have discovered several irregularities that have caused us great concern. Therefore, this letter is to serve as notice that we dispute the validity of the "balance owed" and the "demand for payment" as indicated by the statements sent by M&T Bank Corp.. and received by us. The Fair Debt Collection Practices Act provides for Notice and opportunity to dispute the validity of an alleged debt, and if proof of claim (validity) is requested under the act which has been completed. The requirement that debt collection activity must cease until the "debt" is validated is a due process right. To this end we invoke all reserved rights under the Fair Credit Billing Act, especially Section 161(a) and offer the required information per each subsection as follows:

   a.  Subsection (1): Name on Statement: Elizabeth E. Huff-Crockett
                Account Number on On-Line Statement: 0009456682
   b.  Subsection (2): Statement Date: 06/01/2011
                Billing error amount: Balance: $134,000.00 Payment: $640.89
   c.  Subsection (3): Nature of dispute: There appear to be significant inconsistencies in the closing documents and subsequent statements which calls into question the validity of the transaction.

We also invoke all reserved rights under the Fair Credit Billing Act, whereby we demand as provided for in Section 162 (a), (b) and (c) that the account 0009456682 in dispute shall not bear any derogatory rating or be reported to any local or national credit reporting agencies such that it bears a derogatory rating until this matter is resolved.

We also invoke all reserved rights under the Fair Debt Collection Practices Act, whereby we demand as provided for in:

   a.  Section 805(c), 806(5) 809(B) that all telephonic and personal contact between the parties cease and desist and that all communications between the parties occur via written correspondence and be delivered by United States Postal Service—this in order to limit misunderstandings and maintain well-documented communication between the parties;
   b.  Section 808(6) that all collection and/or foreclosure proceedings appertaining to this account 0009456682 cease and desist forthwith and shall not be initiated until this matter is resolved.

We look forward to bringing this matter to a close within the two billing cycles allowed by the Fair Credit Billing Act as calculated from the date of this notice. We will communicate in writing, within three days, the conclusions of our audit of the irregularities we have found and our demands of proof of validity.

Sincerely,

Elizabeth-Ellen: Crockett
Agent for ELIZABETH E. HUFF-CROCKETT

PLTF EXHIBIT 3

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $0.64 |
| Certified Fee | $2.85 |
| Return Receipt Fee (Endorsement Required) | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $5.79 |

07/11/2011

Sent To
Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

PS Form 3800, August 2006

7011 0470 0002 0780 5811

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 0470 0002 0780 5811

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



F I L E D

Date: July 12, 2011 _____ D.C.

Certified Mail # 70110470000207805835; Return Receipt Requested
To: **Robert G. Wilmers, Chmn/CEO**
    M&T Bank Corp.
    10 Commerce Drive
    Cranford, NJ 07016

    Jeffrey Schmid, Chairman and CEO
    Mutual of Omaha Bank
    3333 Farnam Street
    Omaha, NE 68131

Re: Mutual of Omaha Bank and M&T Bank Corp. vs. Elizabeth E. Huff-Crockett; Account no. 0009456682; my Conditional Acceptance of Your Offer charging me $134,000.00 and the Terms of Contract.

**Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent**

Dear Sir or Madam:

I am in receipt of your Notice that M&T Bank Corp. represents (as trustee) **Mutual of Omaha Bank** (hereinafter 'Mutual of Omaha Bank') the alleged holder of the above referenced loan. As acceptor of your offer to foreclose or collect I have the right to dictate terms (especially those protections I have under the law.

This letter will serve as notice as my acceptance of your offer/claim upon presentment of the original unaltered (**wet ink signature**) note. This is the first requirement under the terms of this self executing agreement. As you know, upon payment, **I am entitled to the original unaltered (wet ink signature) note so that it may not be re-presented by another alleged "debt collector."** In recent cases brought by various banks, the courts have thrown out the complaints for failure by said banks to bring forward the Notes to prove up their claims. Consider the article by Bob Ivry of Bloomberg.com from which this short quote is taken:

> U.S. District Judge David D. Dowd Jr in Ohio's northern district chastised CHASE Bank National Trust Co. and Argent Mortgage Securities Inc. in October for what he called their "cavalier approach'" and "take my word for it" attitude toward proving ownership of the mortgage note in a foreclosure case.
>
> John Gallagher, a spokesman for Frankfurt-based CHASE Bank AG said the bank had no comment.
>
> Federal District Judge Christopher Boyko dismissed 14 foreclosure cases in Cleveland in November due to the **inability of the trustee and the servicer to prove ownership of the mortgages.**
>
> Similar cases were dismissed during the past year by judges in California, Massachusetts, Kansas and New York.
> http://www.bloomberg.com/apps/news?pid=20601109&sid=aejJZdqodTCM&refer=patrick.net

**GMAC L.L.C.** - Updated: Sept. 27, 2010 - In September 2010, GMAC admitted it had violated legal rules in its rush to file foreclosures as quickly as possible and announced it was imposing a moratorium on many of them as it tried to ensure they were done correctly. GMAC declined to provide any details or answer questions, but its actions suggested that it was concerned about potential liability in evicting families and selling houses to which it did not have clear title. The company also said it was reviewing completed foreclosures where the same unnamed procedure might have been used. The issue has broad consequences for the millions of buyers of foreclosed homes, some of whom might not have clear title to their bargain property. And it may offer unforeseen opportunities for those who were evicted. See http://topics.nytimes.com/topics/news/business/companies/gmac-llc/index.html?inline=nyt-org

October 8, 2010, **Bank of America**, Arizona's largest home-mortgage lender, said Friday that it has extended a 23-state moratorium on bank-owned home sales to all 50 states while bank officials scrutinize the way they process foreclosures.

**JPMorgan Chase & Company** - JPM: NYSE; Financials/Banks - Updated: Oct. 13, 2010 - Morgan's Chase Retail Services announced earlier this month that as many as 56,000 of its mortgages had documentation problems, prompting calls for an industry wide investigation and a national moratorium on foreclosures. http://topics.nytimes.com/top/news/business/companies/morgan_j_p_chase_and_company/index.html?inline=nyt-org

**All 50 States Start Inquiry into Foreclosures** - Published: October 13, 2010 - As the nation's attorneys general announced a joint investigation into flawed paperwork filed to support home foreclosures, federal housing regulators urged lenders Wednesday to vet their foreclosure procedures and fix them.
UPDATE 10/23/10, 10/25/10 - **Georgia, California, and Tennessee** Class Action against MERS

PLTF EXHIBIT 4

The judges in these cases know that to convene a court or award judgment without any basis whatsoever is not only a breach of their oath to be impartial, but conspiracy to defraud. The Fair Debt Collection Practices Act provides for Notice and opportunity to dispute the validity of an alleged debt, and if proof of claim (validity) is requested under the act which has been completed. The requirement that debt collection activity must cease until the "debt" is validated is a due process right.

Additionally, several states have now dismissed cases for lack of evidence since the banks have not produced the required **original unaltered (wet ink signature) promissory note, the basis of their claims.** Where the complaining party cannot prove the existence of the note, then there is no note. To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. Without the note there is NO CLAIM.

If you were to accept my payment of $134,000.00 plus costs and fees and should fail to produce the original unaltered (wet ink signature) note, then you would necessarily agree that Mutual of Omaha Bank claim and your claim were frauds, illegal securitization (off balance-sheet treatment of asset-backed securities (ABS) both true sale and assignment constitutes frauds), and without any basis whatsoever. That would make your demand letter (attached) a counterfeit security. It would also mean you were engaged in fraud, fraudulent presentment, deceptive business practices, deprivation of rights and a commercial trespass, therefore injuring me.

Therefore, **I will accept your offer and tender full payment to be held in escrow by Gloria J. Thompson** a third party **Notary Public** (address above. In return you will agree to have your client Mutual of Omaha Bank immediately produce the original unaltered (wet ink signature) note which it claims to be holding and to which I am entitled upon payment.

Additionally, consider this self-executing agreement to be written notification of my approval to release information to Gloria J. Thompson for the purposes of settling account # 0009456682 and exchanging held funds for the original unaltered (wet ink signature) promissory note.

If Mutual of Omaha Bank actually has the note (the basis of their claim) then my tender of payment through the above named escrow agent charged with accepting said note and authenticating Mutual of Omaha Bank's claim should not pose a problem for you and/or your client and this matter will be settled.

Therefore, you agree that once the notary/escrow agent is in receipt of my tender of payment in the amount of $134,000.00, if you and Mutual of Omaha Bank should fail to **immediately** produce the original unaltered (wet ink signature) note, you agree to immediately release your claim for $134,000.00 due to your fraud, fraudulent presentment, and deceptive business practices. **Moreover, you also agree to immediately pay me treble damages:** That would be three times the original amount tendered. So, if I tender $134,000.00 and you fail to produce the original unaltered (wet ink signature) note and/or fail to collect said tender within 20 days of your receipt of notice from the Escrow Agent, or if you attempt to collect from the Escrow Agent but fail to produce the original unaltered (wet ink signature) note, **you agree to immediately pay me $402,000.00.** Should you fail to immediately pay me $402,000.00 you agree to grant me Power of Attorney to handle this business for M&T Bank Corp., Mutual of Omaha Bank and its senior officers as well as granting me a lien against all property held by you and the senior officers of Mutual of Omaha Bank and M&T Bank Corp. You agree that I may collect by selling off your property without your protest and without further notice to you and you agree to pay any legal fees associated with collecting this account and pay a penalty of 1.5% of treble damages per month until full payment of treble damages is settled. The payment of penalties shall not reduce the total of the treble damages but shall be in addition to the total of treble damages paid.

**To insure that this agreement is fully binding:** upon receipt of this agreement, (realizing that Mutual of Omaha Bank may not have the original unaltered (wet ink signature) note) **you have three days to withdraw your claim** by noticing the notary, at the above mailing location, that the claim of Mutual of Omaha Bank and M&T Bank Corp. is null and void and that M&T Bank Corp. and Mutual of Omaha Bank's claim is withdrawn. Should you fail to withdraw the claim, having had notice and opportunity, agree to be bound by the terms of this self executing agreement; agree **not** to proceed with any debt collection, foreclosure or court case as I have made known my intent to tender full payment or else will have already tendered payment, and you agree to accept said settlement as explained above. You further agree to remove any negative or derogatory credit reporting to all credit reporting agencies within 10 days concerning this account. You agree to send proof of removal of all negative or derogatory reporting within said 10 days or pay a penalty of 1.5% of treble damages per month until removed. In addition, should you fail to remove any negative or derogatory credit reporting the previously authorized appointment as Power of Attorney shall authorize me to remove any negative or derogatory credit reporting to all credit reporting agencies without any interference and your full concurrence in order to limit the liability of a penalty of 1.5% of treble damages per month until removed. If you and/or your client choose not to withdraw your claim within 3 days, I will make arrangements to deliver full settlement in the amount of $134,000.00 to the Escrow Agent as described above, under notary seal, immediately.

You and the senior partners of M&T Bank Corp., as well as the CEO and senior partners of Mutual of Omaha Bank agree to be *appointed fiduciaries with the mandatory duty* to settle the claim upon my tender of payment to the escrow agent and to immediately produce the original unaltered (wet ink signature) note. Upon receipt of this agreement, please immediately produce your public hazard bonds, so that I may enforce my claim upon your failure to produce the original unaltered (wet ink signature) note as required under the law.

Sincerely yours,

Elizabeth-Ellen: Crockett, *real party in interest*
Injured Party, Acceptor of Your Offer

# CERTIFIED MAIL RECEIPT

(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ $2.85 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ $5.59 |

Sent To  Mutual of Omaha Bank
Street, Apt. No.;  3333 Farnam Street
or PO Box No.
City, State, ZIP+4  Omaha, NE 68131

PS Form 4811  

U.S. Postal Service

CERTIFIED MAIL   RECEIPT

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

ial of Omaha Bank
Farnam Street
ha, NE 68131

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7011 0470 0002 0780 5835

PS Form 3811, February 2004    Domestic Return Receipt

07/26/2011

FILED

2012 FEB 29 PM 2:50
RICHARD R. ROOKER, CLERK

_____ D.C.

In-care-of Gloria J. Thompson, Notary Public
St. Petersburg, FL 33733-6251

Date: 07/26/2011

Certified Mail # 70110470000207805859
Return Receipt Requested

To: Robert G. Wilmers, Chmn/CEO
M&T Bank Corp.
10 Commerce Drive
Cranford, NJ 07016

Jeffrey Schmid, Chairman and CEO
Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

Re:     Funds in the amount of $134,000.00 held in Escrow for M&T Bank Corp.; to settle Account No. 0009456682;
Original Note Requested and Required for Release of funds; Funds Available until 08/23/2011.

**Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent**

Dear Mr. Wilmers:

As you have been previously noticed via certified mail no.: 70110470000207805835 and at the request of Elizabeth E. Huff-Crockett, I am in receipt, as Escrow Agent, of "legal tender funds" in the amount of $134,000.00 to be paid to **Mutual of Omaha Bank** upon production of the original unaltered (wet ink signature) promissory note held by you as collateral on loan number 0009456682.

At your earliest convenience, please collect the funds by tendering the original unaltered (wet ink signature) note to me by 08/23/2011. Elizabeth E. Huff-Crockett requires this so that the note may not be represented for collection. Upon receipt of the original unaltered (wet ink signature) note, I will forward full payment of $134,000.00 now held in escrow to you or the agent you designate to receive funds. I am also available to personally exchange funds for the instrument. Contact me via **US Mail** as soon as possible to schedule the exchange. Mrs. Crockett will require that I return the payment on 08/23/2011, so please do not delay. Should M&T Bank Corp. and/or Mutual of Omaha Bank default, on 08/23/2011, I will issue an Affidavit of Non Response.

I am not a party to any dealings between M&T Bank Corp., Mutual of Omaha Bank and Mrs. Crockett, and am merely acting as an Escrow Agent (a neutral third party who ensures that all conditions of a transaction are met) to tender to you the funds during the time allotted. It is my responsibility to report either a successful exchange with, or a non-response by, M&T Bank Corp. or Mutual of Omaha Bank. Thank you.

Sincerely yours,

Gloria J. Thompson, Escrow Agent
cc: Elizabeth Ellen Crockett

"Void where prohibited by law."

Note: Notary Public GLORIA J. THOMPSON is not an attorney licensed to practice law in this state and has not given legal advice or accepted fees for legal advice. She has provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. GLORIA J. THOMPSON is NOT a party to this action and is ONLY acting in an authorized capacity as liason and witness to communications between the parties.

PLTF EXHIBIT 5

**THIRD PARTY AFFIDAVIT OF SERVICE**

I, Gloria J. Thompson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the **Notice of Funds Held in Escrow and your Claim charging $134,000.00** on behalf of Elizabeth-Ellen: Crockett was made on ___July 26___, 20_11_ by:_____

X    Mail service: by certified United States mail, postage fully prepaid addressed to:

        Robert G. Wilmers

        M&T Bank Corp.

        10 Commerce Drive
        Cranford, NJ 07016


        Jeffrey Schmid

        Mutual of Omaha Bank

        3333 Farnam Street
        Omaha, NE 68131


___    Personal Service: By leaving the process with attorney for plaintiff

___    Residence Service: By leaving the process with the following:

___    Publication: The defendant was served as follows: [Describe]

___    State Law: The defendant was served pursuant to the laws of the State of as follows: [Describe]

Under penalty of perjury, by the laws of the United States of America USC 1746 (1) I declare that the foregoing is true and correct.

Gloria J. Thompson, Notary Public             7/26/11
c/o P.O. Box 16251                       Date
St. Petersburg, FL 33733-6251

Omaha, NE 68131

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To

Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

PS Form 3800, ...

7011 0470 0002 0780 5835
Domestic Return Receipt

3811, February 2004

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

**COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

Addressed to:

...l of Omaha Bank
...arnam Street
...a, NE 68131

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

G. Crockett

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic and Only; No Insurance Coverage Provided)*

7011 0470 0002 0780 5859
Domestic Return Receipt

3811, February 2004

**FILED**

2012 FEB 29 PM 2:50

RICHARD W. BOOKER, CLERK

In care of: Gloria J. Thompson, Notary Public
P.O. Box 16251
St. Petersburg, FL 33733-625)

Date: 08/23/2011

_____ D.C.

Certified Mail # 70110470000207805866
Return Receipt Requested

**To:** Robert G. Wilmers, Chmn/CEO

M&T Bank Corp.
10 Commerce Drive
Cranford, NJ 07016

Jeffrey Schmid, Chariman and CEO
Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

Re: **Notice of Fault** with regard to the failure of M&T Bank Corp. or Mutual of Omaha Bank to collect $134,000.00 held in Escrow for AHMS to settle Account No. 0009456682; failure of Mutual of Omaha Bank or M&T Bank Corp. to produce the original unaltered (wet ink signature) promissory note required for release of funds; Funds were made available until 08/23/2011, and will be returned on 08/24/2011.

**Notice of Opportunity to Cure!** Please advise me within 72 Hours that the Note will be produced and the Funds will be held and be made available for your collection.

Dear Mr. Wilmers:

As you were previously noticed, at the request of Elizabeth Crockett, I have held in Escrow for over ten days "legal tender funds" in the amount of $134,000.00 to be paid to M&T Bank Corp. upon production of the original unaltered (wet ink signature) promissory note held by you (or your agents) as collateral on loan number 0009456682. As of 08/23/2011 I have not heard from you: No one from M&T Bank Corp. or Mutual of Omaha Bank has contacted me with regard to exchanging the original unaltered (wet ink signature) Promissory Note and collect the $134,000.00 I have held for you.

This is my **Notice of Fault and Notice of Opportunity to Cure!** You have 72 hours from receipt of this notice to collect the funds by tendering the original note to me. Elizabeth Ellen Crockett requires this so that the note may not be represented for collection. Upon receipt of the original note, I will forward full payment of $134,000.00 now held in escrow to you or the agent you designate to receive funds. I am also available to personally exchange funds for the instrument. Contact me as soon as possible to schedule a meeting. Mrs. Crockett will require that I return the payment in just 72 hours from your receipt of this Notice. So please do not delay. Should M&T Bank Corp. and Mutual of Omaha Bank default, on or about 08/24/2011, I will issue an Affidavit of Non Response.

**I am not a party** to any dealings between M&T Bank Corp., Mutual of Omaha Bank et al. and Mrs. Crockett, and am merely acting as an Escrow Agent.

Sincerely yours,

Gloria J. Thompson, Escrow Agent

cc: Elizabeth Crockett

"Void where prohibited by law."

Note: Notary Public GLORIA J. THOMPSON is not an attorney licensed to practice law in this state and has not given legal advice or accepted fees for legal advice. She has provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. GLORIA J. THOMPSON is NOT a party to this action and is ONLY acting in an authorized capacity as liaison and witness to communications between the parties.

**PLTF EXHIBIT 6**

**THIRD PARTY AFFIDAVIT OF SERVICE**

I, Gloria J. Thompson, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of the Notice of Funds Held in Escrow and your Claim charging $134,000.00 on behalf of Elizabeth-Ellen: Crockett was made on _August 23_, 20_11_ by:

X      Mail service: by certified United States mail, postage fully prepaid addressed to:

         Robert G. Wilmers
         M&T Bank Corp.
         10 Commerce Drive
         Cranford, NJ 07016

         Jeffrey Schmid
         Mutual of Omaha Bank
         3333 Farnam Street
         Omaha, NE 68131

___      *Personal Service: By leaving the process with attorney for plaintiff*
___      Residence Service: By leaving the process with the following:
___      Publication: The defendant was served as follows: [Describe]
___      State Law: The defendant was served pursuant to the laws of the State of as follows: [Describe]

Under penalty of perjury, by the laws of the United States of America USC 1746 (1) I declare that the foregoing is true and correct.

_Gloria J. Thompson_            _8/23/11_
Gloria J. Thompson, Notary Public      Date
c/o P.O. Box 16251
St. Petersburg, FL 33733-6251

Case 3:12-cv-00337 Document 1-1 Filed 04/02/12 Page 67 of 78 PageID #: 71

For delivery information visit our website at www.usps.com.

OFFICIAL USE

Postage $

Certified Fee

Return Receipt Fee
(Endorsement Required)

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $

Postmark
Here

7011 0470 0002 0780 5866

Sent To

Mutual of Omaha Bank
3333 Farnam Street
Omaha, NE 68131

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

G. Crockett NFN

PS Form 3800

COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Mutual of Omaha Bank
333 Farnam Street
Omaha, NE 68131

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7011 0470 0002 0780 5866

PS Form 3811, February 2004     Domestic Return Receipt      102595-02-M-1540

FILED

2012 FEB 29 PM 2: 50

RICHARD R. ROOKER, CLERK

2011006075
MACON CO, NC FEE $66.00
NON-STANDARD DOC FEE
PRESENTED & RECORDED
09-09-2011 01:36:56 PM
TODD RABY
REGISTER OF DEEDS
BY: JENNY DEAL
DEPUTY

BK: CRP N-34
PG: 1662-1671

## AFFIDAVIT OF NON-RESPONSE
## COMMERCIAL OATH AND VERIFICATION

The State of Florida )
                     )     Commercial Oath and Verification
Pinellas County )

**Gloria J. Thompson,** Notary Public, acting as a neutral third party Escrow Agent under Her Commercial Oath with unlimited liability, proceeding in good faith being of sound mind states that the facts contained herein are true, correct, complete and not misleading to the best of Her private firsthand knowledge and belief under penalty of International Commercial Law.

1. That the evidence shows that the Respondent, Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank (hereinafter "M&T Bank") named in Elizabeth-Ellen: Crockett's administrative remedy "Conditional Acceptance of Your Offer and Complaint charging me $134,000.00 (with fees and costs) and the Terms of Contract" was duly served by Certified Mail on or about 07/15/2011 AD as attached. With notice to collect the funds held in Escrow and to produce the original unaltered (wet ink signature) promissory note claimed to be held by M&T Bank Corp., servicing agent of Mutual of Omaha Bank and the basis of their claim.

2. That 3 days for M&T Bank Corp., servicing agent of Mutual of Omaha Bank to withdraw the claim and/or demand for payment and refuse Elizabeth-Ellen: Crockett's self-executing contract were allowed and no withdrawal was made.

3. That the Notice of Funds in the amount of $134,000.00 held in Escrow for M&T Bank Corp.; to settle Account No. 0009456682; original unaltered (wet ink Signature) note requested and required for release of funds and the 20 days to collect, as attached, was received and commenced on 07/29/2011.

Page 1 of 3

PLTF EXHIBIT 7

4. That the date to collect the $134,000.00 and produce the original unaltered (wet ink signature) note held by M&T Bank Corp., servicing agent of Mutual of Omaha Bank concluded on 08/23/2011.
5. That the NOTICE OF FAULT, as attached, was received on or about 08/26/2011 AD commencing the 3 day OPPORTUNITY TO CURE not including the day received.
6. That 3 days for mailing were allowed and concluded on or about 08/31/2011.
7. That no response or attempt to collect tendered payment of $134,000.00 held in escrow to any of the above notices is evidenced by U.S. MAIL and any other private carrier.
8. That the Respondent, Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank are now in DEFAULT without recourse and is found in agreement and harmony with the Declarant, Elizabeth-Ellen: Crockett, in his "Conditional Acceptance of Your Offer and Complaint charging $134,000.00 (with fees and costs) and the Terms of Contract." Which terms instructed me to hold $134,000.00 in legal tender funds for collection by Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank upon production of the original unaltered (wet ink signature) note held by M&T Bank Corp., servicing agent of Mutual of Omaha Bank.
9. That the Respondents, Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank et al. all agree that they do NOT have the original unaltered (wet ink signature) note, the basis of their claim and that their claim is therefore fraudulent, a counterfeit security and in violation of federal and state laws punishable by fines and/or imprisonment.
10. That the Respondents, Robert G. Wilmers, Chmn/CEOof M&T Bank Corp., servicing agent of Mutual of Omaha Bank et al. all agree to the terms of Elizabeth-Ellen: Crockett's self executing agreement and each owes treble damages in the amount of $536,000.00, which is three times the original amount of $134,000.00 plus the original amount tendered and held by the Escrow Agent.
11. That the Respondents, Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank et al. all agree to the terms of Elizabeth-Ellen: Crockett's self executing agreement and agree to grant Power of Attorney to Elizabeth-Ellen: Crockett to settle account 0009456682 and collect above referenced treble damages for True, Principal of Mutual of Omaha Bank, and Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., et al., which includes, but not limited to filing mortgage satisfaction, UCC lien against your personal property or any other mean to collect the treble damages in the amount of $536,000.00.
12. That the Respondents, Robert G. Wilmers, Chmn/CEO of M&T Bank Corp., servicing agent of Mutual of Omaha Bank et al. all agree to the terms of Elizabeth-Ellen: Crockett's self executing agreement and agree that may collect by selling off Mutual of Omaha Bank and M&T Bank Corp.'s property without your protest and without further notice to you.
13. NOTARY ACCEPTOR and Escrow Agent further sayeth naught.


SUBSCRIBED AND SWORN

*Gloria J Thompson*        9/1/11

NOTARY ACCEPTOR, Acting Escrow Agent          Date

"Void where prohibited by law"

[Note: Notary Public GLORIA J. THOMPSON is not an attorney licensed to practice law in this state and has not given legal advice or accepted fees for legal advice. She has provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. GLORIA J. THOMPSON is NOT a party to this action and is ONLY acting in an authorized capacity as liaison and witness to communications between the parties.]

Pinellas County          )
                         )    ss.   **JURAT**
Florida Republic         )

I _KAREN B CARON_ , a Notary Public in and for the above state and county, do attest and swear that on this _1st_ day of _SEPTEMBER_ , 20 _11_, that Gloria J. Thompson personally appeared before me, and on the basis of satisfactory evidence proved to be the person(s) who attested and subscribed to the within instrument, by the above-named parties' unlimited commercial liability, as true, correct, complete and not misleading. Witness my hand and seal this _1st_ day of _SEPTEMBER_ , 20 _11_.


_Karen B Caron_
Notary Public

My Commission Expires: _5/18/2012_

KAREN B. CARON
Notary Public, State of Florida
My Comm. Expires May 18, 2012
Nr. DD799971

Page 3 of 3

**CERTIFICATE OF SERVICE**

UNDER PENALTY OF PERJURY, I, Gregory Lee Crockett hereby certify that per Tenn. R.C.P. Rule(s) 4.04(10), 4.04(11), a copy of the foregoing complaint and summons filed in the Court of Common Pleas for the County for Davidson Tennessee was served via USPS Certified Mail Restricted Delivery, in a sealed envelope on or about this 29th day of _February_, 2012 to the following recipients:

1. Verified Complaint for Declaratory Judgment

MUTUAL OF OMAHA BANK
Jeffrey Schmid, CEO
3333Farnan Street
Omaha, NE 68131                    Cert Mail # 7011 0470 0000 9611 1055

M&T BANK Corporation
Robert G. Wilmers, CEO
One M & T Plaza
Buffalo, NY 14203                  Cert Mail # 7011 0470 0000 9611 1048

HSBC Bank USA, N.A.
Irene Dorner, President and CEO
452 5th Avenue
New York, NY 10018                 Cert Mail # 7011 0470 0000 9611 1031

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc.,
Bill Beckmann, President and CEO
1818 Library Street Suite 300
Reston, VA 20190                   Cert Mail # 7011 0470 0000 0611 1024

Gregory Lee Crockett

State of _____ )
                      ) ss.    **JURAT**
County of __Davidson__ )

On this 29 day of February 2012, before me David R.A. Roetger, a Notary Public in and for the above state and county, personally appeared Gregory Lee Crockett who proved to me on the basis of satisfactory evidence to be the person(s) who attested and subscribed to the within document, as true, correct, complete and not misleading. Witness my hand and seal this 29 day of February, 2012.

Notary Public          Seal

DAVID R.A. ROETGER
STATE
OF
TENNESSEE
NOTARY
PUBLIC
WILLIAMSON COUNTY
My Commission Expires 07-21-2013

- 15 -

usps.com/postageonline

PLEASE PRESS F


UNITED STATES
POSTAL SERVICE



1006      20190


NASHVILLE·TN
37202
MAR 07 '12
AMOUNT

**$15.00**
00050120-05

# Flat Rate
# Mailing Envelope

**For Domestic and International Use**

**Visit us at usps.com**


PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7011 0470 0000 9611 1024



RETURN RECEIPT
REQUESTED

From:/Expéditeur:



PRIORITY®
MAIL
UNITED STATES POSTAL SERVICE

For Domestic
and International Use

From
ELIZABETH CROCKETT
2915 WOODLAWN DR.
NASHVILLE, TN 37215

RESTRICTED
DELIVERY

TO BILL BECKMANN
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS
1818 LIBRARY STREET, STE #300
RESTON, VA 20190

Label 228, January 2008



COPY

IN THE CIRCUIT COURT
FOR DAVIDSON COUNTY, TENNESSEE

2012 APR -2 PM 1: 37

RICHARD R. ROOKER, CLERK

_____ _____ D.C.

| | |
|---|---|
| ELIZABETH E. CROCKETT, | |
| Plaintiff, | |
| v. | Case No. 12C889 |
| MUTUAL OF OMAHA BANK, Alleged Successor by Acquisition of FIRST NATIONAL BANK OF NEVADA and its affiliates, as Trustee for FIRST NATIONAL BANK OF ARIZONA Pass-Through Certificates series 2007-HY-3 Trust, M&T BANK CORPORATION Trust; M&T BANK CORPORATION; HSBC BANK USA, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc., as a Nominee for FIRST NATIONAL BANK OF ARIZONA | |
| Defendants. | |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT** on April 2, 2012, Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and HSBC Bank USA, N.A. ("HSBC") (collectively "moving Defendants"), filed in the United States District Court for the Middle District of Tennessee, Nashville Division, their Notice of Removal. A copy of Defendants' Notice of Removal is attached hereto as **Exhibit A**, and it is served and filed herewith.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to 28 U.S.C. § 1446, the filing of the Notice of Removal with the United States District Court, together with the filing of this Notice of Filing of Removal, effects the removal of the action, and this Court shall proceed no further unless and until the case has been remanded.

931941:1:NASHVILLE

This the 2nd day of April, 2012.

Respectfully submitted,

_Paul Allen England_

Donna L. Roberts (BPR No. 22249)
Paul Allen England (BPR No. 26288)
STITES & HARBISON, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2200 (phone)
(615) 742-0705 (fax)
donna.roberts@stites.com
paul.england@stites.com

*Counsel for Mortgage Electronic
Registration Systems, Inc. and HSBC Bank
USA, N.A.*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 2nd day of April, 2012, a true and exact copy of the foregoing was served via First Class U.S. mail, postage prepaid, as indicated below:

*Via U.S. Mail:*
Elizabeth E. Crockett
2915 Woodlawn Dr.
Nashville, TN 37215

*Pro Se Plaintiff*

_Paul Allen England_

Paul Allen England

\36498579.1

COPY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

2012 APR -2 PM 1:37

MICHAEL _____ CLERK

_____ D.C.

ELIZABETH E. CROCKETT,

        Plaintiff,

  v.

Civil Action No. _____

MUTUAL OF OMAHA BANK, Alleged
Successor by Acquisition of FIRST
NATIONAL BANK OF NEVADA and its
affiliates, as Trustee for FIRST NATIONAL
BANK OF ARIZONA Pass-Through
Certificates series 2007-HY-3 Trust, M&T
BANK CORPORATION Trust; M&T
BANK CORPORATION; HSBC BANK
USA, N.A.; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, Inc., as a
Nominee for FIRST NATIONAL BANK OF
ARIZONA

        Defendants.

## NOTICE OF REMOVAL

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and HSBC Bank

USA, N.A. ("HSBC") (collectively "moving Defendants") by their undersigned attorneys and

pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, file this Notice of Removal from the Circuit

Court of Davidson County, Tennessee to the United States District Court for the Middle District

of Tennessee, Nashville Division.  In support of this Notice of Removal, moving Defendants

state as follows:

## I.    FACTS AND PROCEEDINGS

1.      On February 29, 2012, Plaintiff Elizabeth E. Crockett ("Plaintiff") filed a

Complaint in the Circuit Court for Davidson County, Tennessee.



2. The Complaint is based on alleged events related to property located at 2915 Woodlawn Drive, Nashville, Tennessee (the "Property").

3. Both MERS and HSBC were served on March 8, 2012.

4. Upon information and belief, no other Defendants have been served in this matter. Thus, pursuant to 28 U.S.C. § 1446(b)(2), their consent to remove is not required.

## II. THIS NOTICE OF REMOVAL IS TIMELY FILED

5. This Notice of Removal is filed within thirty (30) days of service of moving Defendants. *See* 28 U.S.C. § 1446(b).

6. This removal is timely because it is filed "within thirty days of receiving the document that provides the basis for removal." *Loftis v. UPS*, 342 F.3d 509, 516 (6th Cir. 2003). The thirty day period does not begin to run until formal service of the summons and complaint. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).

7. In compliance with 28 U.S.C. § 1446(a), a copy of all "process, pleadings, and orders" received by moving Defendants are attached hereto as **Exhibit B**.

## III. REMOVAL PROCEDURES

8. Removal of this case is proper under 28 U.S.C. § 1441(a), which provides in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1441(a). Moving Defendants seek to remove this case to the Middle District of Tennessee. The Circuit Court for

Davidson County, Tennessee is located within this District, and cases arising from Davidson County are properly assigned to the Nashville Division of this Court. *See* 28 U.S.C. § 123(b)(1).

## IV.     THIS COURT HAS FEDERAL QUESTION JURISDICTION.

10.     Removal of this case is proper under 28 U.S.C. § 1441(a), which provides, in pertinent part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a) (2010).

11.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 as it is apparent on the face of Plaintiff's Complaint that this action arises under and presents a question of federal law. *See generally* Compl. Plaintiff has alleged claims against Defendants for violation of the Real Estate Settlement Procedures Act ("RESPA") and Truth in Lending Act ("TILA") Compl. p. 13.

12.     To the extent the Complaint alleges statutory, state common law or other nonfederal claims, this Court has supplemental jurisdiction over any such claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as Plaintiff's claims under federal law and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

13.     Because, at the very least, some of Plaintiff's alleged right to relief arises under the laws of the United States, removal of this entire cause of action is appropriate under 28 U.S.C. § 1441(a)-(c).

## V.     CONCLUSION

WHEREFORE, moving Defendants respectfully request the above-captioned action now pending in the Circuit Court for Davidson County, be removed to the United States District

Case 3:12-cv-00337   Document 1-1   Filed 04/02/12   Page 77 of 78 PageID #: 81

Court for the Middle District of Tennessee, and that said United States District Court assume jurisdiction of this action and enter such other and further orders as may be necessary to accomplish the requested removal and promote the ends of justice.

This the 2nd day of April, 2012.                    Respectfully submitted,


/s/ Paul Allen England
Donna L. Roberts (BPR No. 22249)
Paul Allen England (BPR No. 26288)
STITES & HARBISON, PLLC
SunTrust Plaza
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2200 (phone)
(615) 742-0705 (fax)
donna.roberts@stites.com
paul.england@stites.com

*Counsel for Mortgage Electronic Registration Systems, Inc. and HSBC Bank USA, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2012, that a true and correct copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically and/or via first-class U.S. mail, postage prepaid, as indicated below.

*Via U.S. Mail:*
Elizabeth E. Crockett
2915 Woodlawn Dr.
Nashville, TN 37215


*Pro Se Plaintiff*


/s/ Paul Allen England
Paul Allen England


36498579.1